813 So.2d 589 (2002)
Bradley JACKSON
v.
IBERIA PARISH GOVERNMENT.
No. 01-0925.
Court of Appeal of Louisiana, Third Circuit.
March 20, 2002.
Writ Denied June 14, 2002.
*590 Alex A. Lopresto III, Roy, Forrest & Lopresto, New Iberia, LA, for Defendant/Appellee: Iberia Parish Government.
Leon E. Roy III, Roy, Forrest & Lopresto, New Iberia, LA, for Defendant/Appellee: Iberia Parish Government.
Janice Hebert Barber, Attorney at Law, Lafayette, LA, for Plaintiff/Appellant: Bradley Jackson.
Court composed of JOHN D. SAUNDERS, OSWALD A. DECUIR, and GLENN B. GREMILLION, Judges.
DECUIR, Judge.
In this workers' compensation case, the claimant, Bradley Jackson, appeals the judgment of the workers' compensation judge denying benefits. For the following reasons, we affirm the judgment rendered below.

FACTS
Bradley Jackson began working for the Iberia Parish Government in 1984. He was employed as an operator, and in July of 1992, he was injured in the course and scope of employment while climbing a tractor grader. He fell and injured his lower back. He was paid medical and disability benefits and transportation expenses for a period of time extending from the time of the accident until December 6, 1993.
Subsequently, in 1994, a hearing was conducted to determine whether benefits should be extended. The workers' compensation judge ruled that Jackson failed to establish that his work-related injury continued to cause him disability after December 6, 1993, and further compensation *591 was denied. Jackson appealed this decision, and we affirmed in Jackson v. Iberia Parish Gov't, 94-1395 (La.App. 3 Cir. 4/5/96), 651 So.2d 992.
On September 17, 1997, Jackson filed a disputed claim with the Office of Workers' Compensation, styled a "Motion to Modify Judgment." Jackson sought additional compensation benefits, alleging that his medical condition had deteriorated. After a trial on the merits, judgment was rendered in favor of Iberia and against Jackson. The judge found Jackson failed to prove by a preponderance of the evidence that he experienced a change in his lower back condition and denied his motion to modify the 1994 judgment. As a result, Jackson filed this appeal.

LAW AND ANALYSIS

Standard of Review
In workers' compensation cases, the factual findings of the workers' compensation judge are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688 (La.12/02/97), 704 So.2d 1161. When applying this standard, we are not to determine whether the factfinder was right or wrong, but rather, whether the factfinder's conclusion was a reasonable one. Id. Thus, if the judge's findings are reasonable in light of the record reviewed in its entirety, we may not reverse even if we would have weighed the evidence differently. Romero v. Northrop-Grumman, 01-0024 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149. However, if we determine that the trial court committed manifest error in its factual determinations or a reversible error of law, we conduct a de novo review of the record. Rosell v. ESCO, 549 So.2d 840 (La.1989).

Assignment of Error
On appeal, Jackson asserts the following assignment of error:
When a myelogram/post CT Scan and EMG/NCV test established that there was worsening of the claimant's condition, clinical correlation confirmed the worsening, and two out of three physicians testified to the worsening of the claimant's condition, the Office of Workers' Compensation Judge erred when holding that the claimant failed to prove that his condition had worsened.
In determining whether there is any merit to this assignment, the pivotal issue is whether there has been a change in Jackson's medical condition making him eligible for further workers' compensation benefits. At trial, Jackson had the burden of proving that his compensation benefits should be reinstated because of a change in his condition in accordance with La.R.S. 23:1310.8(B). That statute provides in pertinent part:
Upon the application of any party in interest, on the ground of a change in conditions, workers' compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, and shall state his conclusions of fact and rulings of law
. . . .
Under the law, the claimant must prove both a change in his condition resulting in disability and that his present condition was caused by the work-related injury. In the instant case, the workers' compensation judge reviewed various test results, medical reports, and the deposition testimony of three physicians, and heard the claimant testify. The court determined that Jackson had not met his burden of *592 proof and denied the reinstatement of benefits. Our review of the record reveals that the lower court's reliance on the testimony of Drs. Shepherd and Bernard was within its discretion and will not be disturbed in the absence of manifest error.
Dr. Louis Blanda was Jackson's treating physician. He diagnosed a left lateral disc protrusion at L5-S1 in 1992 and recommended surgery at that time. The surgery was never approved and Dr. Blanda continued seeing Jackson in 1993 and 1994. In 1996, Dr. Blanda found that Jackson's condition had deteriorated and that he was now suffering from pain and numbness in both legs, walking difficulties, and urinary incontinence. It was also his opinion that a comparison of the diagnostic tests done in 1992 and 1993 with similar tests in 1996 indicated that there had been a development of the left lateral disc protrusion at L5-S1 that now demonstrated a displacement. The radiologist, Dr. J.J. Laborde, agreed with this finding. Dr. Blanda again recommended surgery and described Jackson's deteriorating condition as gradual and continuous.
Dr. Clifton Shepherd was first hired by the employer to evaluate Jackson in 1993. He saw Jackson again in 1999 and reviewed the diagnostic testing performed in 1993 and 1996. Upon review of the medical records, he noted that Jackson's condition had changed based on a comparison of the 1996 myelogram and the two previous myelograms. In addition, he observed that the 1996 EMG showed a change in his condition in comparison to the 1993 EMG. Although Dr. Shepherd found changes in both the clinical presentation and test results, he did not believe Jackson's condition warranted surgical intervention. Dr. Shepherd did not believe Jackson's condition in 1999 was caused by his 1992 work-related accident. He specifically noted that the disc bulge at L5-S1, which appeared in the 1996 tests, would have also shown up in the 1993 tests had the condition been the result of the work-related accident.
Dr. Douglas Bernard was appointed by the court to give an independent evaluation of Jackson's condition. He examined Jackson in 1993, 1996, and 1999, pursuant to the court's order. Based on his three medical examinations, he agreed with Dr. Shepherd that Jackson did not need surgery, and, in fact, was of the opinion that Jackson's back condition was normal in the past and that no problems have developed.
The record also shows since his 1992 work-related injury Jackson has developed a heart condition, has prostate problems, and takes blood pressure and other medications. He was involved in a motor vehicle accident in 1997 and was treated for several months for a cervical strain.
The workers' compensation judge relied on the testimony of two physiciansone appointed by the court and the other hired by the employer. They both implied that any change on the 1996 MRI, when compared to the 1993 MRI, was minimal and insignificant. The court's reliance on this testimony, and the rejection of Dr. Blanda's opinion, was within its discretion. The conclusion that Jackson failed to prove by a preponderance of the evidence that he has experienced a change in condition warranting a reinstatement of benefits is not, in our view, manifestly erroneous.
Generally, an independent court-appointed expert's opinion is considered as prima facie evidence of the facts stated therein. La.R.S. 23:1123; Fritz v. Home Furniture-Lafayette, 95-1705 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132. As such, the workers' compensation judge gave much credit to the findings of Dr. Bernard, and based on his opinions, the judge did not find a change in Jackson's medical condition.
*593 For the above reasons, we conclude that a reasonable basis exists for the workers' compensation judge's findings and that those findings are not manifestly erroneous. Based on the evidence, Jackson has not sufficiently proven that there has been a change in condition.

DECREE
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to Bradley Jackson.
AFFIRMED.
SAUNDERS, J., dissents and assigns reasons.
SAUNDERS, J. dissenting.
Because I find that there has been a change in condition which is causally related to Jackson's 1992 work injury, I cannot agree with the majority's findings in this case. In making its determination of whether there was a change in condition, the workers' compensation court and the majority relied heavily on the opinions of Drs. Shepherd and Bernard; however, I respectfully submit that this reliance is misplaced.
Dr. Laborde, a radiologist, performed a lumbar spine myelogram and post myelogram CT on Jackson in 1992. At that time, Dr. Laborde diagnosed a possible herniated disc in Jackson's lower back. In his report, he stated, "[t]he study indicates that the posterior border of the L5-S1 disc space appears to be asymmetric. There is suggestion of a very small left lateral soft tissue protrusion causing a posterior displacement of the left S1 nerve root...." Then, in 1996, Dr. Laborde again conducted a myelogram on the Plaintiff. He saw a protrusion in the L5-S1 area and recommended a CT scan for further evaluation. He conducted the scan, and he diagnosed a "... development of a left lateral focal disc protrusion at L5-S1 that now demonstrates posterior displacement of the left S1 nerve root." In his report, he indicated that the extent of the disc protrusion was not present in prior studies. In essence, his medical reports indicated that a suggestion of a small disc herniation in 1992 deteriorated into a definite disc herniation in 1996 which reaffirmed his previous findings and indicated a change in condition.
Dr. Blanda, Jackson's treating physician, began treating Jackson in 1992, and he originally found that the Plaintiff was disabled and recommended a surgical procedure, in particular, a bilateral diskectomy at L5-S1 to correct the problem. He again treated Jackson in 1996 and found that his condition deteriorated. In fact, he testified that his condition has changed and that his lower back condition has gradually and continuously deteriorated since his injury in 1992. Further, Dr. Shepherd who conducted clinical examinations of the Plaintiff in 1993 and in 1999 felt that his clinical findings in 1999 had changed compared to his clinical findings in 1993. He reviewed the test results of 1993, 1996, and 1999, and, although he did not diagnose any back problems in 1993, he recognized that Jackson suffered from back problems in 1996 and 1999.
Dr. Bernard examined Jackson in 1993, 1996, and 1999 pursuant to the court's order. Based on his three medical examinations and the radiological studies provided by Laborde Diagnostics in 1993, 1996, and 1999, Dr. Bernard was of the opinion that Jackson's back condition was normal in the past and that Jackson does not currently have any back problems. As such, he did not agree with the three other doctors who recognized that Jackson's back condition has changed and that he currently suffers from back problems. When the findings of such an independent court appointed expert are not patently *594 sound, they should be discarded. Green v. Louisiana Coca Cola Bottling, 477 So.2d 904 (La.App. 4th Cir.1985); writ denied, 478 So.2d 910 (1985). After reviewing the record, I am of the opinion that the findings of Dr. Bernard are not patently sound for the following reasons.
First, Dr. Laborde, Dr. Blanda, and Dr. Shepherd agreed that there has been a change in condition of Jackson's back. Dr. Bernard is the only doctor who did not find any problem with Jackson's back in 1993, 1996, and 1999. He is of the opinion that Jackson's condition is normal and that he does not require any surgery. The record is replete with findings of a disc protrusion in Jackson's lower back; yet, Dr. Bernard does not offer any plausible explanation for his difference in opinion in comparison with the three other doctors. It is now well settled that, when an expert fails to offer any plausible explanation for his opinion, the appellate court should find a verdict based on this testimony manifestly erroneous. Fusilier v. Dauterive, 00-0151 (La.7/14/00); 764 So.2d 74.
Further, Dr. Laborde's diagnosis should be given great weight because he is a radiologist. A radiologist is "a physician who specializes in the use of x-rays and other forms of radiation in the diagnosis and treatment of disease." Dorlands Illustrated Medical Dictionary 28th ed. 1994 (Emphasis supplied.) Dr. Laborde conducted several tests on Jackson including CT scans and myelograms in 1992 and 1996. He originally diagnosed Jackson's back problem in 1992 and recognized that the condition had worsened in 1996. Dr. Laborde's findings that there was a change in condition are extremely plausible considering he is a specialist in his field. He not only conducted the tests, but the other testifying physicians based their opinions in part relying on his tests results. As such, his findings should be accorded great weight. Moreover, the objective nature of this test and their clear results are compelling evidence of a change in condition. In my opinion, Jackson has sufficiently proven that there has been a change in condition.
Having determined that the trial court was manifestly erroneous in finding that a change in condition did not exist, I will address the issue of causation and consider whether the 1992 injury was the source of Jackson's current medical problems or whether some intervening cause brought about his current problems. There is a strong presumption that the claimant's current condition was caused by the original work injury in 1992. Louisiana law provides that a claimant's disability is presumed to be causally related to the employment injury if before the accident the injured person was in good health, but commencing with the accident, the symptoms of the disabling injury continue to manifest themselves. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985). Upon the claimant's proving of an employment accident and subsequent disability, the burden then shifts to the employer to prove an intervening cause or lack of causal connection. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444; Bruno v. Guaranty Bank & Trust Co., 617 So.2d 1351(La.App. 3 Cir.1993).
It is undisputed that the work accident occurred in 1992, and that the Plaintiff was in good health before the 1992 injury. Moreover, it is clear from the record that he has continued to suffer back problems since his work-related accident. His deteriorating back condition continues to manifest itself, and three of the four doctors recognize that he is suffering from a herniated disc. Furthermore, Dr. Blanda, who has treated him for the past ten years, testified that his medical condition is related *595 to the accident. As such, the Plaintiff has met his burden of showing that he has a disability and the occurrence of an accident; thus, the accident is presumed to be causally related to his current condition.
The burden then shifted to the Defendant to show the absence of a causal connection between the injury and the accident. Lemoine, supra. In attempting to prove that the work accident did not cause the injury, Iberia relies on the testimony of Dr. Shepherd. Dr. Shepherd testified that, if the L5-S1 disc injury existed in 1992 and 1993, the injury would have appeared on the radiographic studies. Further, he suggests that the fact that the disc protrusion appeared four years later indicates that it was not caused by the employment accident; however, he offers no explanation or proof as to what could have caused the current injuries. Moreover, Dr. Laborde's reports indicated the beginnings of a disc protrusion in 1992 which continued to deteriorate into a more definite and serious disc protrusion in 1996.
Further, the Defendant tried to meet its burden by introducing evidence of an automobile accident during the trial. Jackson was injured on April 4, 1997, in an automobile accident and was treated by Dr. Wiltz with Teche Action. Dr. Wiltz provided certified medical records which were entered into evidence. Upon review of this evidence, it is my opinion that the accident was not an intervening cause for the following reasons. First, the records indicate that Jackson suffered only a neck strain for which he was treated for eight months. Second, the records do not mention treatment of Jackson's lower back. Finally, there is no mention of an aggravation of Jackson's lower back injury. As such, Iberia has failed to prove that the auto accident was an intervening event. The preponderance of the medical evidence indicates that Jackson's disc herniation in L5-S1 is causally connected to the 1992 work-related injury. For the above reasons, it is my opinion that the judgment of the Workers' Compensation judge should be reversed, and Jackson's benefits should be reinstated.