602 So.2d 129 (1992)
James and Mary DOE, etc.
v.
The ROMAN CATHOLIC CHURCH FOR the ARCHDIOCESE OF NEW ORLEANS, et al.
No. 91-CA-0988.
Court of Appeal of Louisiana, Fourth Circuit.
June 18, 1992.
Rehearings Denied July 15, 1992.
*130 Lawrence D. Wiedemann, Wiedemann & Wiedemann, and David W. Bernberg, Jacobs, Manuel & Kain, New Orleans, for plaintiffs, appellees.
Don M. Richard, Denechaud and Denechaud, and Ernest L. O'Bannon, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for defendants, appellants.
Bruce C. Waltzer, Paul S. Weidenfeld, New Orleans, for defendant, appellant.
Before KLEES, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
James and Mary Doe sued individually for loss of consortium and on behalf of their minor daughter, S.R., for damages she sustained as a result of sexual assaults by her tutor, Daniel Vanno. Besides Vanno, also named as defendants in the suit were the Roman Catholic Church of The Archdiocese of New Orleans, Archbishop Phillip M. Hannan, Monsignor John A. Tomasovich (Pastor of St. Andrew the Apostle Church), the Catholic Youth Ministry, Reverend Ronald L. Calkins (a former assistant pastor at St. Andrew), the St. Andrew New Youth Organization (SANYO), the St. Andrew the Apostle Church, and Reverend Eugene F. Jacques (another former assistant pastor of St. Andrew) ("church defendants"). The church defendants were named because S.R. met Vanno through his position as head of SANYO.
The jury returned a verdict finding that only Vanno was "negligent" and that his "negligence was a proximate cause of S.R.'s damage." S.R. was awarded $20,000 for past and future medical expenses plus $150,000 for past and future pain, suffering, mental anguish, humiliation, and embarrassment. The jury found that the church defendants were neither negligent, the proximate cause of S.R.'s damages, nor liable for Vanno's actions under the doctrine of respondeat superior.
The plaintiffs filed multiple post-trial motions, including a motion for judgment notwithstanding the verdict (JNOV), which was granted by the trial court, holding the church defendants solidarily liable with Vanno for $170,000. The trial judge denied two motions filed by the plaintiffsa motion for JNOV on the loss of consortium claim and a motion for addituras well as motions for new trial and for remittitur filed by Vanno.
Plaintiffs appeal on the loss of consortium claim and seek an increase in the quantum award to their daughter. The church defendants appeal the granting of the JNOV on the respondeat superior issue. Vanno appeals, claiming the quantum is excessive.
Because we find that the applicable law was improperly stated in the law charges given by the trial judge, we remand the case to the trial court for retrial.

FACTS:
The victim originally met Vanno when he and his wife served as lead couple for the St. Andrew New Youth Organization (SANYO), of which the victim was a member. Apparently, Mrs. Vanno offered her husband's tutoring services when she learned that the victim's inability to attend SANYO *131 activities was caused by her poor academic performance in algebra. Vanno tutored the victim on four occasions, twice at his home and twice in a SANYO office, where the last and most serious sexual assault occurred.
The victim stated that Vanno tried to hug and kiss her while going to his car and while in his car when he was driving her home after the first three tutoring sessions. Then, during the fourth tutoring session in the SANYO offices, he kissed her, pushed her to the floor, raised up her blouse and began licking and kissing her breasts. At this time, the victim became very upset and pled with Vanno to stop, which he did. Moreover, the victim claims that while taking her home after that session, Vanno placed her hand between his legs and asked her if she wanted to touch him there. The victim withdrew her hand while responding "No" to Vanno's question. This was the last tutoring session to occur.
The victim's parents had no knowledge of the molestations until several months after the final incident, when they overheard a phone conversation between the victim and a friend. They immediately confronted their daughter with the allegations and, upon their daughter's confirmation of the incidents, they notified Father Gene Jacques at St. Andrew. The victim met privately with Father Jacques and explained to him what had transpired in her meetings with Vanno. Father Jacques expressed his regret and advised the victim to seek counseling at the expense of the church. The victim received counseling, but the church discontinued paying for the services after a month or so, claiming no responsibility for the incidents.
After learning of the molestations, James and Mary Doe reacted in a protectionist manner. They removed many of their daughter's privileges and even began recording her phone conversations. At trial, the victim stated that she was a "virtual prisoner" in her own home. The victim finally reacted to this treatment by running away from home to live with a boyfriend and his mother. At the time of trial, some 3½ years after the molestation, the victim had dropped out of school and was working at the checkout counter in a Delchamps supermarket. Prior to the incident she claimed that she aspired to become a veterinarian.
Vanno and his wife were unpaid volunteers at St. Andrew's church. They had been selected as lead couple for the youth group by the other parents involved in the program. SANYO did not provide a tutoring program at the time of the incident, but Vanno had apparently done some tutoring on the premises at a previous time. As a result of the allegations, the Vannos were removed as lead couple of SANYO. A previous incident of alleged impropriety also arose at trial; Vanno had apparently viewed a pornographic movie at his home with several boys who were members of the church. However, no conclusive evidence that church authorities had prior knowledge of the previous event was presented.

JNOV AGAINST THE CHURCH DEFENDANTS
The Louisiana Supreme Court recently summarized the standard for appellate review of a trial court's granting of a motion for JNOV as follows:
The article controlling the use of a JNOV is LSA-C.C.P. Art. 1811. The article does not specify the grounds on which a trial judge may grant a JNOV. In Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986), we set forth the criteria to be used in determining when a JNOV is proper. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial *132 judgment might reach different conclusions, the motion should be denied. Scott, supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences and factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict could be reinstated.
Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 831-32 (La.1991).
In her oral reasons for granting the JNOV, the trial judge stated as follows:
The testimony was abundantly clear that Mr. Daniel Vanno and his wife as the couple charged with responsibility for the catholic youth organization at the St. Andrew Church had access to these youngsters because of their responsibility and role; it was abundantly clear from the testimony that Mr. Vanno in fact had keys to the church buildings, and in one of the three instances where physical molestation took place it was in fact on church property in the building that Mr. Daniel Vanno was using for tutoring sessions. The other two instances I believe occurred in an automobile when he was transporting this youngster to and from tutoring. Based on all of this, the Court can find no distinction in the law for treating a volunteer differently from an employee. The Court's of the opinion that had Daniel Vanno been an employee of the Roman Catholic Church that the church will have exposure and liability, and even though he was an unpaid worker at the church, in fact a volunteer, this Court makes no distinction between a category of volunter and worker, and for that reason will grant the motion for judgment notwithstanding the verdict and enter the same verdict with reference to the several church defendants. The church defendants claim that they are not vicariously liable for Vanno's acts because the doctrine is only applicable if a master-servant relationship exists. Alternatively, they assert that even when a master-servant relationship exists, liability may not be imposed upon the employer simply because of that relationship. The church defendants contend that the trial judge incorrectly charged the jury on this issue; they admit that the record contains no objection to the jury charge.
The trial judge gave the following jury charge on the respondent superior issue:
Masters and employees [sic] are answerable for the damages occasioned by their servants and overseers in the exercise of the functions in which they are appointed.
Masters and employees [sic] are responsible for not only their own negligent act, but for the act of their servant or employees. If you find that a servant of the Defendant was negligent, the master is equally as liable. The master need not be personally negligent, but can be held vicariously liable due to the fault of his servant.
The Doctrine of Respondeat Superior may be applicable to charitable organizations where the tort feasor was a volunteer unpaid at the time he was working for the charity. The Ecclesiastical and/or religious body may be held liable under this doctrine of Respondeat Superior.
On the basis of the above instruction, the jury concluded that the church defendants were not liable to the plaintiffs for Vanno's negligence. The trial judge, in granting the JNOV, came to the conclusion that reasonable men could not have concluded *133 that the church defendants were not responsible for Vanno's actions.
Louisiana's law on vicarious liability based on the respondeat superior doctrine is clear. Under the express provisions of La.C.C. art. 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Under the jurisprudence interpreting that provision, the determination of whether a party may be held vicariously liable for the torts of another depends on whether the tortfeasor is characterized as a "servant." Unquestionably, a principal is not liable for the torts of a nonservant agent. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 751 (La. 1987); Lasseigne v. American Legion, Nicholson Post No. 38, 543 So.2d 1111, 1114 (La.App. 1st Cir.1989). Liability does not flow merely from the existence of a principal-agent relationship. Verret on Behalf of Gatlin v. Scott, 470 So.2d 228, 231 (La. App. 4th Cir.), writ not considered 472 So.2d 910 (1985).
The instant case involves a religious or charitable organization's liability for the torts of a volunteer. Generally, "[o]ne who volunteers services without an agreement for or expectation of reward may be a servant of one accepting such services." Restatement (2d) of Agency § 225. Determination of whether a given volunteer is in fact a servant generally depends on the charitable organization's right to control the activities of the volunteer. Allan Manley, Annotation, Liability of Charitable Organization Under Respondeat Superior Doctrine for Tort of Unpaid Volunteer, 82 ALR3d 1213, § 2[a]. Determination of the right to control is a question of fact, based on consideration of the following factors: (1) degree to which the charity orders the volunteer to perform specific actions, (2) degree of contact between the charity and the volunteer, and (3) structural hierarchy of the charity.
Under the provisions of La.C.C.P. art. 1792, a trial judge is charged with the responsibility of instructing the jurors on "the law applicable to the cause submitted to them." The jurisprudence requires that the trial judge give instructions which "properly reflect law applicable in view of the facts presented." Creel v. S.A. Tarver & Son Tractor Co., Inc., 537 So.2d 752, 753 (La.App. 1st Cir.1988). If the instructions given by the trial judge are confusing or misleading, or if they omit an essential element, they are insufficient. Gonzales v. Xerox Corp., 307 So.2d 153 (La.App. 1st Cir.1974), aff'd in part, rev'd in part on other grounds 320 So.2d 163 (La.1975). In Gonzales, the court stated as follows:
Parties to a lawsuit have the right to have the evidence weighed in light of proper jury instructions, which fairly and reasonably point up issues presented by pleadings and evidence, and which provide correct principles of law for a jury's application thereto.
When a jury is utilized, that jury must accept the law as given by the trial judge and apply it to the evidence. Therefore, instruction to the jury should not be so erroneous as to deny a proper determination of the facts and issues under the law. Under this theory jury instruction are inadequate where there is no assurance that the jury could make a legal determination of the issues before it.
Id. (Citations omitted.)
In the instant case, the trial court's jury instructions failed to distinguish between servants and other types of agents, which is critical to determination of the application of respondeat superior vicarious liability under Louisiana law. Since the trial judge failed to state the law applicable to the material issue, the jury was obviously unable to apply the correct law to the facts before it.
The problem created by the fact that the jury was not properly instructed on the applicable law on this issue was compounded the fact that the trial judge's oral reasons for granting the JNOV reveal that the she did not herself appreciate the applicable law. Since neither the jury nor the trial judge applied the correct law to the facts, the parties were denied the right to trial by *134 jury. Since the law was wrong, both the jury verdict and the JNOV were incorrect.
Since the record in this case is complete, this court has the inherent power to review the record to determine whether Vanno acted as "servant" for the church defendants at the time he sexually assaulted the victim in this case. However, because the parties requested a jury trial, and no jury has considered that close factual question in the light of the correct law, we decline to do so. This case is hereby remanded to the trial court for retrial before a jury under the correct law.
Because we have decided to remand this case for reconsideration, it is unnecessary to consider the other issues argued by the parties. However, we note that Vanno assigns the admission of certain expert testimony as error. On retrial, the trial judge is directed to closely monitor the questioning of the plaintiff's expert witness to assure that no "Golden Rule" testimony is admitted.
For the above and foregoing reasons, the trial court judgment is reversed and the case is remanded for retrial before a jury. Assessment of costs of this appeal will be determined at the retrial.
REVERSED AND REMANDED.