# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1519

**KENNETH PERRY**

**VERSUS**

**PERRY & SONS VAULT & GRAVE SERVICE**

\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 02-4847,
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*

## MICHAEL G. SULLIVAN
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billie Colombaro Woodard, and Michael G. Sullivan, Judges.

**REVERSED IN PART, AMENDED, AND AFFIRMED AS AMENDED.**

Darrell R. Sims
Darrell R. Sims, LLC
434 North Columbia Street, Suite 200
Covington, Louisiana  70433
(504) 846-8320
Counsel for Plaintiff/Appellee:
    Kenneth Perry

Bradley J. Gadel
Bradley J. Gadel, APLC
Post Office Box 1632
Alexandria, Louisiana   71309-1632
(318) 445-4480
Counsel for Defendant/Appellant:
    Perry & Sons Vault & Grave Services, Inc.

**Deanne B. McCauley**
**Rabalais, Unland & Lorio**
**5100 Village Walk, Suite 300**
**Covington, Louisiana  70433**
**(985) 893-9900**
**Counsel for Defendants/Appellees:**
**Scott Perry, Jr. Sanitation Services, Inc.**
**Louisiana Commerce and Trade Association Self Insurers' Fund**

SULLIVAN, Judge.

On October 26, 2001, Kenneth Perry was injured as he drove to an auto parts store to pick up parts for a vehicle owned by Perry & Sons Vault & Grave Services, Inc. (Perry & Sons). He filed a claim for workers' compensation benefits with Louisiana United Businesses Association Self-Insurers Fund (LUBA-SIF), Perry & Sons' workers' compensation carrier. LUBA-SIF began paying him indemnity and medical benefits upon receiving notice of his claim but terminated those benefits when it received a sworn statement in which Kenneth stated that his wages were paid by Scott E. Perry, Jr. Sanitation Services, Inc. (Sanitation Services). After LUBA-SIF terminated his benefits, Kenneth filed a disputed claim against Perry & Sons, LUBA-SIF, Sanitation Services, and its workers' compensation carrier, Louisiana Commerce and Trade Association Self-Insurers Fund (LCTA-SIF), asserting that he is entitled to workers' compensation benefits from both Perry & Sons and Sanitation Services. The workers' compensation judge (WCJ) determined that Kenneth was an employee of Perry & Sons at the time he was injured and awarded him indemnity and medical benefits and $5,000.00 in attorney fees against LUBA-SIF. Perry & Sons and LUBA-SIF appeal. We reverse in part, amend, and affirm as amended.

*Facts*

Scott Perry, Jr. incorporated Sanitation Services approximately forty-five years ago. The corporation provides residential and commercial waste pickup services. Kenneth is Mr. Perry's son. He began working for the corporation in approximately 1983. He drives a twenty cubic ton garbage truck five days a week. He also performs light mechanic work on the vehicles owned by Sanitation Services. He explained that Sanitation Service employees report mechanical problems with Sanitation Services' vehicles to him. He checks out the complaints and makes the repairs he is capable of performing, and any repairs he cannot perform are performed by third parties.

Mr. Perry incorporated Perry & Sons approximately ten years ago. Kenneth also performs services for Perry & Sons, which include driving a truck, light maintenance on Perry & Sons' vehicles, opening graves, and placing vaults in the ground. He performs these services only after he has completed his work for Sanitation Services or on weekends. Kenneth estimated that he spends approximately 70% of his work time performing services for Sanitation Services and 30% of his time performing services for Perry & Sons. He is paid wages by Sanitation Services only.

Mr. Perry testified that he is the "quarterback" of these two corporations and that he directs the activities of both corporations and their employees. Mr. Perry further testified that Kenneth's job description primarily involves Sanitation Services, but includes doing anything else that he tells him to do, whether it is for Perry & Sons or Sanitation Services. Mr. Perry testified that he believes he has the discretion to instruct his employees what work to perform regardless of which company pays their salary.

The WCJ held that Kenneth is an employee of Perry & Sons. Additionally, the WCJ found that LUBA-SIF was arbitrary and capricious in terminating Kenneth's benefits because it judicially admitted that Perry & Sons was his employer in a petition of intervention, which it filed in Kenneth's lawsuit for personal injuries against the driver of the automobile that hit him and caused his injuries.

### *Standard of Review*

On appeal, the WCJ's findings of fact cannot be reversed unless they are manifestly erroneous. If the review on appeal reveals a reversible error of law, a *de novo* review of the record must be conducted. *Jackson v. Iberia Parish Gov't*, 01-925 (La.App. 3 Cir. 3/20/02), 813 So.2d 589, *writ denied*, 02-1075 (La. 6/14/02), 817 So.2d 1159, *citing Rosell v. ESCO*, 549 So.2d 840 (La.1989).

2

*Motion to Dismiss Appeal*

Kenneth filed a motion to dismiss this appeal on the basis that LUBA-SIF judicially admitted that it was his employer when it intervened in his personal injury suit. The following allegations in LUBA-SIF's petition of intervention are the basis of Kenneth's motion to dismiss this appeal:

4.

Intervenor shows that on or about October 26, 2001, Kenneth Perry received injuries while performing duties within the course and scope of his employment.

5.

As a result of the accident and injuries alleged therein by the original plaintiff, KENNETH PERRY has made a claim under the *Workers' Compensation Act* against your intervenor.

6.

Pursuant to law and the claim made by KENNETH PERRY, your intervenor has paid to and on behalf of KENNETH PERRY indemnity benefits and medical benefits.

"A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it." La.Civ.Code art. 1853. For a statement to be a judicial confession, it must expressly acknowledge an adverse fact. *Cheatham v. City of New Orleans*, 378 So.2d 369 (La.1979). *See also Broussard v. Leger*, 624 So.2d 1304 (La.App. 3 Cir. 1993), *writ denied*, 93-2762 (La. 1/7/94), 631 So.2d 452.

LUBA-SIF's allegations in its petition of intervention do not admit the correctness of a fact alleged against it. The allegations do admit that Kenneth was in the course and scope of his employment when he was injured, but they do not admit that he was an employee of Perry & Sons. Thus, they are not a judicial admission. Accordingly, we deny the motion to dismiss and reverse the WCJ's finding that

LUBA-SIF judicially admitted that Kenneth was injured in the course and scope of employment with Perry & Sons.

## *Discussion*

### *Is Kenneth an employee of Perry & Sons?*

In their first assignment of error, Perry & Sons and LUBA-SIF argue that Kenneth was not an employee of Perry & Sons, nor was he a borrowed servant of Sanitation Services. Kenneth asserts that Sanitation Services and Perry & Sons are joint employers. The WCJ rejected this contention. Sanitation Services contends that the WCJ's determination is correct.

The WCJ determined that Kenneth was an employee of Perry & Sons at the time of his accident and that he was not a borrowed servant of Sanitation Services. The WCJ determined that Kenneth was a Perry & Sons employee even though he was never paid a salary by this corporation. This determination was predicated on cases where there was no "economic relationship" between the alleged employee and employer.

"As a general rule for an employer-employee relationship to exist, there must be a contract of employment, either expressed or implied, whereby services are furnished in anticipation of compensation." *Deville v. Pugh*, 490 So.2d 800, 802 (La.App. 3 Cir. 1986). While exceptions to this general rule have been recognized, the cases cited by the WCJ in support of his conclusion reflect that the exceptions have been in the context of vicarious liability to third parties. For example, in *Avery v. Commercial Union Insurance Co.*, 621 So.2d 184 (La.App. 3 Cir. 1993), the defendant's brother and former employee was performing a favor for the defendant by cleaning the property around the defendant's business. In doing so, he started a fire to burn trash which spread out of control. Smoke from the fire obscured the

4

vision of drivers on the adjacent highway, causing an accident. The brother was found to be a servant for whose actions the defendant was vicariously liable. In *Whittington v. Sowela Technical Institute*, 438 So.2d 236 (La.App. 3 Cir.), *writs denied*, 443 So.2d 591, 592 (La.1983), a class of nursing students was being driven by a fellow student nurse on a field trip when an accident occurred, killing the plaintiffs' wife and mother. The trip was not required by the institute, but the students would receive additional credit if they attended. The institute designated the date, time, and driver and provided transportation and supervision for the trip. The student driver was found to be the institute's servant, and the institute was found vicariously liable for her negligence.

The WCJ also cited *Whetstone v. Dixon*, 616 So.2d 764 (La.App. 1 Cir.), *writs denied*, 623 So.2d 1333 (La.1993), in support of his determination that Kenneth was an employee of Perry & Sons. In *Whetstone,* a volunteer deacon caused an automobile accident while on a mission for the church. The deacon's relationship with the church was ongoing. In finding the deacon an employee of the church, the court relied upon jurisprudence which specifically addressed the relationships of religious and charitable organizations with their volunteers, *see Doe v. Roman Catholic Church*, 602 So.2d 129 (La.App. 4 Cir. 1992), *vacated and remanded*, 606 So.2d 524 (La.1992), *on remand*, 615 So.2d 410 (La.App. 4 Cir. 1993),[1] and the fact that the church had no paid employees.

The WCJ also cited *Deville*, 490 So.2d 800, in support of his conclusion that Perry & Sons is Kenneth's employer. However, the court in *Deville* rejected the

---

[1]The supreme court's reversal of the fourth circuit's opinion was a reversal of that court's remand to the trial court for a new trial. It was not a reversal of the court's determination of the legal issues addressed therein.

plaintiff's contention that he was an employee and owed wages, specifically, because he was not paid a salary by the defendant.

None of the cases cited by the WCJ were determined on the basis of a claimant's status as an employee for purposes of entitlement to workers' compensation benefits. Our review of the jurisprudence reveals that, in the context of claims for workers' compensation benefits, lack of compensation has been an important factor in determining that an employer-employee relationship did not exist. In *Trunk v. Medical Center of Louisiana*, 03-275 (La.App. 4 Cir. 12/17/03), 863 So.2d 675, the plaintiff, a medical student at Louisiana State University (LSU), sought damages for injuries she suffered as a result of a slip and fall at the Medical Center. The court determined she was not an employee of LSU and, hence, not a borrowed employee of the Medical Center because she was not paid for her services. In *Jordan v. Central Management Co.*, 99-748 (La.App. 3 Cir. 10/13/99), 745 So.2d 116, *writ denied*, 99-3231 (La. 1/14/00), 753 So.2d 220, the claimant, a licensed practical nurse on staff with the defendant, was injured while performing hairdressing services for a resident of the defendant's nursing home. This court determined she was not the defendant's employee at the time she was injured because she was paid by residents, not the defendant, for her hairdressing services. In another student setting, the plaintiff was a student at a commercial school which specialized in training medical support personnel. While in training at a hospital, the plaintiff was instructed to assist restraining a patient who was infected with HIV and suffered from AIDS. As a result, the student contracted HIV, and he filed suit against the school and hospital to recover damages. The court found the student did not render services "in anticipation of compensation" and was not an employee of the school or a borrowed employee of the hospital. *Dustin v. DHCI Home Health Servs., Inc.*, 95-1989 (La.App. 1 Cir. 5/10/96),

673 So.2d 356. In *Genusa v. Pointe Coupee Volunteer Fire District No. 4,* 93-2214 (La.App 1 Cir. 10/7/94), 644 So.2d 851, the claimant, a volunteer fireman, injured his back while attempting to repair a fire truck. The WCJ denied benefits, citing the fact that the claimant was not compensated. On appeal, the claimant argued that "the essence of the employment relationship is not based upon remuneration, but upon the right of control." *Id.* at 852. Citing the general rule that for an employer-employee relationship to exist there must compensation, the court of appeal rejected the argument.

Our consideration of this issue leads us to the conclusion that the WCJ committed an error of law in his analysis of Kenneth's relationship with Perry & Sons and that, because Kenneth was not paid wages by Perry & Sons, he was not an employee of the company. We reverse this finding of the WCJ.

### *Is Kenneth a borrowed servant of Perry & Sons?*

The WCJ rejected Kenneth's contention that he was Perry & Sons' borrowed servant at the time of his injury. On appeal, Perry & Sons and LUBA-SIF argue Kenneth was not a Perry and Sons employee; Sanitation Services and LCTA-SIF [2] argue he was not a Sanitation Services employee; and they all contend he was not Perry & Sons' borrowed employee at the time of his injury. For the following reasons, we find the WCJ's determination of this issue clearly wrong.

The factors to be considered when determining whether an employee is a borrowed servant are: (1) who has the right of control over the employee beyond the mere suggestion of details or cooperation; (2) who selected the employee; (3) who

---

[2] Sanitation Services and LCTA-SIF contend the issue of borrowed servant is not before this court because Kenneth did not file an answer to Perry & Sons' and LUBA-SIF's appeal. The WCJ granted Kenneth relief on one of the grounds asserted in his claim. Pursuant to La.Code Civ.P. art. 2133, he was not required to answer the appeal if he did not seek to have the judgment modified, revised, or reversed on this issue. Perry & Sons' appeal put his employer-employee relationship at issue. *Diefenthal v. Longue Vue Mgmt. Corp.,* 561 So.2d 44 (La.1990).

paid the employee's wages; (4) who had the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) was the new employment over a considerable length of time; (7) whose work was being done at the time of the accident; (8) was there an agreement between the borrowing and lending employers; (9) did the employee acquiesce in the new work situation; and (10) did the original employer terminate his relationship with or relinquish his control over the employee. *Green v. Popeye's Inc.*, 619 So.2d 69 (La.App. 3 Cir.1993).

No single factor is decisive, and no fixed test is used to determine the existence of a borrowed servant relationship. *Trunk*, 863 So.2d 675. However, there is a presumption that the general employer retains control of his employee, and the party who alleges that an employee has become a borrowed servant bears the burden of proving that issue by a preponderance of the evidence. *Harrington v. Hebert*, 00-1548 (La.App. 3 Cir. 5/23/01), 789 So.2d 649.

The evidence established that Mr. Perry wears two hats: one as head of Perry & Sons and one as head of Sanitation Services. He controls the employees of both corporations and has the right to fire any employee of either corporation at any time. Kenneth worked twenty years for Sanitation Services, which paid his wages. Since Perry & Sons' inception, he has performed services for the corporation and was performing services for Perry & Sons when he was injured. Sanitation Services and Perry & Sons maintain separate equipment. Because Mr. Perry owned and operated both corporations and directed his employees, including his sons, to perform work for both corporations, we find there was an implicit agreement between Perry & Sons and Sanitation Services to exchange the services of employees of both corporations between the two corporations as determined solely by Mr. Perry. Kenneth clearly acquiesced to this arrangement.

8

The last factor of the borrowed servant analysis, "did the original employer terminate his relationship with or relinquish his control over the employee," was an important factor in the WCJ's determination:

> The evidence does not show that Mr. Scott Perry ever terminated his relationship with Mr. Kenneth Perry with respect to his employment through the sanitation company. The employment may have been over a considerable period of time. Certainly Mr. Scott Perry retained a right to discharge Mr. Kenneth Perry if he had so chosen to do and the Sanitation Services company maintained the obligation to pay Mr. Kenneth Perry.
>
> Because there is no clear showing of a termination of the relationship between Mr. Scott Perry as the employer for Sanitation Services and Mr. Scott Perry as the employer for the Perry and Sons Vault company, because Sanitation Services maintained the right - the obligation to pay Mr. Kenneth Perry because there is no accounting between the two companies to assess the time that Mr. Kenneth performed work for the Perry and Sons Vault company being charged back against the sanitation company, the Court finds that this is not a case of a borrowed servant.

In *Humphreys v. Marquette Casualty Co.*, 235 La. 355, 103 So.2d 895 (La. 1958), the supreme court was presented with a similar situation. N. P. Martone managed a ranch owned by a partnership which consisted of his wife and mother-in-law. Independently, he conducted rice farming operations. The ranch employed ranch hands who Martone used in his rice farming operations when needed. The ranch hands were paid by the ranch and overseen by Martone whether they were performing ranching operations or farming operations. Two of the ranch hands were electrocuted when performing farming duties for Martone's farming operations. The supreme court considered the relationship of Martone in both of his capacities to the employees and determined that the ranch hands were borrowed servants of his rice farming operation when they died, explaining:

> They were paid by Bon-Air Ranch, but the evidence clearly shows that the method of payment was by the custom of the particular vicinity in which the deceased worked. The general employer continued to pay his employees' salaries when they were loaned to rice farmers, because he,

9

likewise, borrowed servants from the rice farmers during their slack seasons, and these servants' salaries were paid by their general employers. *Mr. N. P. Martone, as manager of his rice farming business, had direct control over the deceased. Their hours, duties, and method of work were controlled by him. There is no doubt that he could have discharged the deceased had they not worked in an obedient and satisfactory manner. It is an extraneous circumstance that he could have also discharged them when he was acting as Manager of Bon-Air Ranch. The deceased employees were aware of the custom of swapping employees, and they knew that they were working as farmers and not as 'cowboys'.*

*Id*. at 901-02 (emphasis added).

We find the supreme court's analysis in *Humphreys* applicable to Mr. Perry as the owner and operator of Perry & Sons and Sanitation Services. Mr. Perry's testimony was clear that he controlled the duties and work of the employees of both corporations and that he would fire anyone who failed to do as told. As in *Humphreys*, we find it "extraneous" that he could fire Kenneth when acting as owner of Sanitation Services because the evidence establishes that he could also fire him as the owner of Perry & Sons. Additionally, as the owner of both corporations, Mr. Perry was not concerned about an accounting between the two corporations for services provided to each corporation by employees of its sister corporation. His primary concern was seeing that the work got done. Accordingly, we conclude that Kenneth was an employee of Sanitation Services and Perry & Sons' borrowed employee at the time of his injury.

Perry & Sons and LUBA-SIF cite the case of *Wise v. Employers Mutual Liability Insurance Co. of Wisconsin*, 224 So.2d 33 (La.App. 1 Cir.), *writ denied*, 254 La. 776, 226 So.2d 769 (La.1969), in support of their position that Kenneth was not Perry & Sons' borrowed employee. In *Wise*, the claimant was employed by Superior Casing Crews, Inc. His employment included driving heavy trucks and handling heavy equipment. While on call, he was contacted by his foreman and instructed to

10

report to Superior Testers, Inc. and help load two heavy testing units on the truck. The employee completed the task and delivered the units as required. The claimant was again contacted later that day and instructed to report to Superior Casing Crews, Inc.'s site to load another piece of Superior Testers, Inc.'s equipment and deliver it. He was injured when loading the unit on his truck.

Superior Casing Crews, Inc. contended that the claimant was Superior Testers, Inc.'s borrowed employee when he was injured. It pointed to the fact that the claimant was paid by Superior Testers, Inc. on that occasion. The court of appeal affirmed the trial court's determination that the claimant employee was in the course and scope of his employment with Superior Casing Crews, Inc. at the time of his injury, noting that Superior Testers, Inc. had never before paid claimant for his services and that Superior Testers, Inc.'s equipment was being loaded onto the Superior Casing Crews, Inc. truck for it to be delivered by the claimant who was a truck driver for Superior Casing Crews, Inc. This was apparently the type of work Superior Casing Crews, Inc. provided to all of its customers, not just Superior Testers, Inc., so the claimant was performing the same work he performed for Superior Casing Crews, Inc. That is not the situation here. Furthermore, the claimant had provided the same services to Superior Testers, Inc. but had never been paid by Superior Testers, Inc. previously. More importantly, we note that while both corporations in *Wise* were incorporated by the same person, the court's discussion indicates that the corporations were operated independently of each other and that the incorporator did not personally control the employees as Mr. Perry does.

All of the defendants argue that Kenneth provided services to Perry & Sons gratuitously as a result of his love and affection for his father because Kenneth was not paid separately by that corporation. As discussed above, Mr. Perry operated both

corporations as he saw fit, instructing his employees to do whatever work needed to be done, regardless of which corporation paid their salaries and which corporation's work was being performed. We find no merit in this argument.

Kenneth asserts that his employment with Sanitation Services and Perry & Sons was a joint employment. The WCJ held this is not a case of a joint employer relationship because the two activities of the companies were distinct and separate from each other. We find no error with this conclusion.

Joint employment requires a "common enterprise that contemplates the employment and control of the claimant by one of the interested parties for the benefit of all." *Kahl v. Baudoin*, 449 So.2d 1334, 1336 (La.1984), *quoting Babineaux v. Southeastern Drilling Corp.*, 170 So.2d 518 at 529 (La.App. 3 Cir. 1965), *writs denied*, 247 La. 613-15, 172 So.2d 700, *appeal dismissed,* 86 S.Ct. 67, 38 U.S. 16. Even though Perry & Sons and Sanitation Services are owned and operated by the same individual, they are not common enterprises. Each corporation provides different services which are not dependent upon, related to, or complementary of the services provided by the other corporation.

A general employer and a borrowing special employer are solidarily liable for workers' compensation benefits. La.R.S. 23:1031(C). Therefore, Perry & Sons and LUBA-SIF are solidarily liable with Sanitation Services and LCTA-SIF for Kenneth's workers' compensation benefits. However, we cannot render judgment in Kenneth's favor against Sanitation Services and LCTA-SIF because he did not appeal the WCJ's judgment dismissing his claims against them and that judgment is now final. This situation is addressed by La.R.S. 23:1031(C) which provides that Perry & Sons has the right to seek contribution for payments made on behalf of Kenneth from Sanitation

12

Services and LCTA-SIF, unless they contracted for a specific method of contribution.

### *Attorney Fees*

The basis of the WCJ's $5,000.00 award of attorney fees is his conclusion that LUBA-SIF made a "judicial admission" that Kenneth was employed by Perry & Sons. As previously discussed, LUBA-SIF did not make a judicial admission in its petition of intervention that Perry & Sons was Kenneth's employer. Accordingly, the award of attorney fees on this basis was error. However, LUBA-SIF's actions do warrant the imposition of attorney fees under La.R.S. 23:1201.2. In *J.E. Merit Constructors, Inc. v. Hickman,* 00-943, p. 5 (La. 1/17/01), 776 So.2d 435, 437-38 (footnote omitted), the supreme court discussed the appropriateness of an award for attorney fees when workers' compensation benefits were discontinued:

> Under La. R.S. 23:1201.2, reasonable attorney's fees are awarded as a penalty under the workers' compensation law when an employer discontinues payment of benefits, "when such discontinuance is found to be arbitrary, capricious, or without probable cause." Arbitrary and capricious behavior is willful and unreasonable action, without consideration and regard for the facts and circumstances presented. *Williams v. Rush Masonry, Inc.*, 98-2271, p. 8 (La.6/29/99), 737 So.2d 41, 45-46. An award of attorney's fees in a workers' compensation case is essentially penal in nature, as it is intended to discourage indifference and undesirable conduct by employers and insurers. *Sharbono v. Steve Lang & Son Loggers*, 97-0110 (La.7/1/97), 696 So.2d 1382 (citations omitted). Attorney's fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. *Id.*

This is not a doubtful case. There was no question that Kenneth was entitled to workers' compensation benefits. The only question was which insurance company, if not both, was obligated to pay those benefits. LUBA-SIF knew that, if it had paid the benefits and was found not to be Kenneth's employer, it had recourse against LCTA-SIF to recoup the amounts paid. Additionally, it could have entered into an

agreement with LCTA-SIF regarding Kenneth's benefits, as both were potentially solidarily liable for the payment of those benefits. Instead, Kenneth was arbitrarily allowed to suffer without benefits or medical treatment, and the burden was placed upon him to file suit to establish the liability of the two insurance companies. Accordingly, we find LUBA-SIF's discontinuance of Kenneth's benefits was arbitrary, capricious, and without probable cause. The award of attorney fees is affirmed.

### *Penalties*

Kenneth urges that the WCJ erred in not awarding him penalties for the termination of his benefits. Perry & Sons did not appeal this issue, and Kenneth did not file an answer to complain of the denial of penalties. Therefore, this issue is not before us. La.Code Civ.P. art. 2133.

### *Disposition*

For the foregoing reasons, the WCJ's judgment is reversed with regard to the determinations that LUBA-SIF judicially admitted that Kenneth Perry was injured in the course and scope of his employment with Perry & Sons Vault & Grave Services, Inc. and that Kenneth Perry was not an employee of Perry & Sons Vault & Grave Services, Inc.; the judgment is amended to provide that Perry & Sons Vault & Grave Services, Inc. was the borrowing employer of Kenneth Perry at the time of his injury and is liable to him for compensation benefits. The judgment's award of attorney fees is affirmed.

**REVERSED IN PART, AMENDED, AND AFFIRMED AS AMENDED.**

14