# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-428

**LOUISIANA WORKERS' COMPENSATION
CORPORATION**

**VERSUS**

**INDUSTRIAL HELICOPTERS, LLC**

\*\*\*\*\*\*\*\*\*\*

SUPERVISORY WRIT FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 16-00535
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**

**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and Candyce G. Perret,
Judges.

**WRIT GRANTED.**

**Kenneth H. Laborde**
**Brendan P. Doherty**
**Bradley J. Schwab**
**Gieger, Laborde & Laperouse**
**One Shell Square**
**701 Poydras Street, Suite 4800**
**New Orleans, LA 70139-4800**
**(504) 561-0400**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **Industrial Helicopters, LLC**

**Gregory E. Bodin**
**Christopher M. Vitenas**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**
**Chase North Tower**
**450 Laurel Street, 20th Floor**
**Baton Rouge, LA 70801**
**(225) 381-7000**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
    **Louisiana Workers' Compensation Corporation**

**SAUNDERS, Judge.**

Two applications seeking supervisory writs from judgments of the Office of Workers' Compensation (OWC), Parish of Lafayette, the Honorable Sharon Morrow presiding, have been filed in this matter, which has been before this Court on several previous occasions in an underlying tort litigation filed by Tommie Hebert (Hebert) and his wife against Industrial Helicopters, LLC (Industrial), among other defendants, for injuries Hebert sustained in a helicopter accident. *See Hebert v. Richard*, 10-417 (La.App. 3 Cir. 7/6/11), 72 So.3d 892; *Hebert v. Richard*, 15-8 (La.App. 3 Cir. 6/17/15), 166 So.3d 1265 (*Hebert II*), *writs denied*, 15-1390, 15-1391 (La. 10/2/15), 178 So.3d 991; *Hebert v. Richard*, 16-427 (La.App. 3 Cir. 11/2/16), 206 So.3d 251 (*Hebert III*), *writ denied*, 16-2058 (La. 1/19/17), 214 So.3d 870.

In the first writ application, docket number 17-1419, Defendant/Plaintiff-in-Reconvention-Relator, Industrial, seeks supervisory writ from the OWC judgment, which granted summary judgment in favor of Plaintiff/Defendant-in-Reconvention, Louisiana Workers' Compensation Corporation (LWCC), Industrial's workers' compensation insurer, finding the doctrine of res judicata precluded relitigation of whether Hebert was in the course and scope of his employment with Industrial at the time of the accident.

In the second writ application, docket number 17-428, LWCC seeks review of the OWC judgment, which granted partial summary judgment in favor of Industrial, holding that coverage would be afforded to Industrial under LWCC's policy in the event it is determined that Hebert was in the course and scope of his employment with Game Management, Inc. (GMI), as a borrowed employee, at the time of his injury.

# STATEMENT OF THE CASE

This matter arises out of an accident in which Hebert fell from a helicopter, owned by Industrial, while capturing whitetail deer using a deer-netting gun in Mexico on March 3, 2007. Industrial voluntarily began paying medical bills and issuing weekly checks to Hebert as workers' compensation benefits. LWCC denied coverage based on its determination that Hebert was not in the course and scope of his employment with Industrial at the time of the accident. Hebert and his wife sued, in tort, the owner and operator of the helicopter, Industrial, as well as GMI, a wildlife survey company. Both Industrial and GMI are owned by J. Oran Richard. As a defense, Industrial argued that (1) GMI was Hebert's special/borrowing employer who had borrowed Hebert from his general employer, Industrial and (2) under La.R.S. 23:1031(C),[1] both Industrial and GMI were solidarily liable for workers' compensation benefits and, therefore, immune from suit in tort. The trial court granted summary judgment in favor of Industrial on this issue. On appeal, this court reversed, explaining:

> GMI is not a borrowing employer. Further, the control by Industrial in this case renders Industrial, but not GMI, liable for workers' compensation benefits and entitled to tort immunity if Mr. Hebert was in the course and scope of his employment with Industrial at the time of his accident. Industrial states that he was not.

---

[1]Louisiana Revised Statutes 23:1031(C) provides:

In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed. The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.

2

*Hebert I*, 72 So.3d at 903. Following remand, the Heberts filed a motion for partial summary judgment, asserting no genuine issue of material fact existed pertaining to the issue of Industrial's immunity from tort liability, given Industrial judicially admitted Hebert's injuries did not occur in the course and scope of his employment with Industrial in multiple filings of record. The trial court denied the motion, and after trial, the jury found Hebert was in the course and scope of his employment with Industrial at the time of the accident, awarding $1,500,000.00 in special damages and $500,000.00 in general damages. On appeal, this court again reversed, finding, relevant herein, that (1) the statement made by Industrial constituted a "judicial confession" that Hebert was not in the course and scope of his employment with Industrial at the time of the accident and (2) after reviewing all of the admissible evidence, including Industrial's confession, "the evidence overwhelmingly establishes that Hebert was not in the course and scope of his employment with Industrial at the time of the accident." *Hebert II*, 166 So.3d at 1274, 1276. At this point, LWCC sought to intervene in the action, seeking to have its obligations under its workers' compensation policy resolved, but the trial court denied the motion. After remand, this court further concluded that Industrial was entitled to an offset for the $503,839.49 in workers' compensation benefits already paid "as it was not responsible for workers' compensation benefits since Mr. Hebert was not in the course and scope of his employment." *Hebert III*, 206 So.3d at 254. Industrial has taken full credit for the offset, but still seeks to recover the entire $503,839.49 from LWCC.

Meanwhile, LWCC filed a Petition for Declaratory Judgment in the OWC, seeking a declaration that no coverage was afforded under its policy issued to Industrial. Industrial filed a counterclaim seeking coverage under the policy,

arguing Hebert was in the course and scope of his employment at the time of the accident, either directly with Industrial or as a borrowed employee.

Thereafter, LWCC filed its motion for summary judgment, seeking, in part, an order that this court's course and scope ruling was res judicata between the parties, precluding relitigation of this issue. Industrial opposed the motion, contending that res judicata is not applicable because this action and the *Hebert* action are not between the same parties. It also filed its own motion for partial summary judgment, seeking an order that coverage would be afforded under LWCC's policy in the event it is determined that Hebert was in the course and scope of his employment with either Industrial or with GMI as a borrowed employee at the time of the accident. In response, LWCC argued there was no way Industrial ccould be the lending employer because this court has already determined Hebert was not in the course and scope of his employment with Industrial at the time of the accident.

The OWC first heard LWCC's motion on March 3, 2017. Finding it was bound by this court's ruling on "direct" employment, the OWC granted summary judgment on the res judicata issue from the bench, noting:

> And you make good arguments, [defense counsel]; I understand the arguments. I see where you're coming from. It just goes against the grain for me to say, "Well, I disagree with the Third Circuit holding here." It's kind of like a child and a parent; you don't tell your parent you disagree. You wait for the parent to maybe change its mind or take a different approach. So I'm not saying that your argument doesn't have merit. It's just I do feel bound by that finding.

In a separate hearing held on March 22, 2017, the OWC granted partial summary judgment in favor of Industrial, finding, on the very narrow issue of general employment, "that if it is determined that Industrial was a general employer and Game Management, Inc. was a special employer of Tommie Hebert at the time of his accident, then coverage for worker's compensation benefits will

be payable under the policy LWCC issued to Industrial." Industrial now seeks review of the OWC's grant of summary judgment on the issue of res judicata (17-419), and LWCC seeks review of the OWC's grant of partial summary judgment on the borrowing employer/general employer issue (17-428).

## SUPERVISORY RELIEF

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P. arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. But see La.Code Civ.P. art. 2083, comment (b), Comments- -2005, which provides, in pertinent part, "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs." "A court of appeal has plenary power to exercise supervisory jurisdiction over [trial] courts and may do so at any time, according to the discretion of the court." *Herlitz Const. Co., Inc. v. Hotel Inv'rs of New Iberia, Inc.*, 396 So.2d 878, 878 (La.1981) (per curiam). When the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. *Id.*

## ON THE MERITS

An appellate court reviews a motion for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. The reviewing court, therefore, is tasked with determining whether "the motion, memorandum, and supporting documents show that there is no genuine issue as to

material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

### 17-428 LWCC's application on borrowing/general employer status

Pursuant to La.R.S. 23:1032(A), an employee or his dependent who is entitled to workers' compensation benefits is limited to the rights and remedies under the Workers' Compensation Act (WCA) to the exclusion of all other rights, remedies, and claims for damages, except for intentional acts and unless otherwise expressly provided by statute. Under La.R.S. 23:1031(C), a borrowing employer is solidarily liable with a general employer for workers' compensation benefits, and the borrowed employee is barred from bringing a tort action against the borrowing employer as well as the general employer. *Pradia v. S. Personnel of La., Inc.*, 00-365 (La.App. 3 Cir. 10/11/00), 776 So.2d 474, *writ denied*, 00-3018 (La. 1/5/01), 778 So.2d 599; La.R.S. 23:1031(C).  The exclusive remedy provision of our WCA ensures, therefore, that injuries arising from accidents within the course and scope of employment are only recoverable in workers' compensation, except under the intentional acts loophole.  *See Moreno v. Entergy Corp.*, 12-97 (La. 12/4/12), 105 So.3d 40; *Caudle v. Betts*, 512 So.2d 389 (La.1987).  Injuries not resulting from an accident within the course and scope of employment are compensable under our traditional tort remedies.  *Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065.

LWCC argues the OWC erred in holding that, despite Hebert not being in the course and scope of his employment with Industrial at the time of the accident and despite LWCC not having a separate policy with GMI, the policy issued to Industrial would afford coverage if it is determined that Hebert was the general or lending employee of Industrial at the time of the accident.  At the very core of the borrowing employer doctrine is the recognition that there is more than one

potential employer—a borrower and a lender—who may be responsible to an injured worker for the payment of benefits. This fiction of liability to a "borrowing employer" ends here because this court has already determined that Industrial cannot be the "lending employer" in its holding that (1) Hebert was outside the course and scope of his employment with Industrial and (2) Industrial was only liable to Hebert for tort damages. Industrial now seeks to upset this court's ruling and attempt a second bite at the apple by seeking to recover the tort damages it owed to Hebert under LWCC's workers' compensation policy.

In opposition, Industrial argues that LWCC's policy obligates LWCC to pay promptly when due the benefits required of Industrial by the workers compensation law. If, at the time of the accident, Hebert was employed by GMI, making GMI his borrowing employer, then under the provisions of La.R.S. 23:1031(C), Industrial, as his general employer, was still obligated to pay benefits under the WCA. It also argues that this court's determination that Hebert was not in the course and scope of his employment with Industrial does not preclude coverage because, under the borrowed servant doctrine, the general employer's responsibility/liability extends also to circumstances where the employee is injured in the course and scope of employment as a borrowed employee under the direction and control of the borrowing/special employer.[2] Finally, just because Industrial was found liable in tort does not preclude a borrowed employee scenario as there has never been a determination by any court that Hebert was not in the course and scope of his employment at all, such as would result in a determination that Industrial was not obligated to pay benefits.

---

[2]The court cited, for its result, *Arabie Bros. Trucking Co., v. Gautreaux*, 03-120 (La.App. 1 Cir. 8/4/04), 880 So.2d 932, *writ denied*, 04-2481 (La. 12/10/04), 888 So.2d 846 (stipulation of employee that he was not in the course and scope of employment with his general employer did not resolve issue of whether he was borrowed employee of another entity).

In this matter, Industrial advances a position in which it seeks to recover "comp benefits" for which it has already received a credit on its tort liability and after this court has conclusively held that Industrial is only liable in tort. Under the exclusivity provisions of the WCA, an employer cannot be held liable in both tort and workers' compensation in this circumstance, and yet, Industrial attempts to circumvent this through its arguments regarding the inapplicability of res judicata and the borrowed servant doctrine. As to the latter argument, the borrowed servant issue has been previously addressed and decided by this court. In *Hebert I*, this court reversed the trial court's grant of summary judgment on this very issue, engaging in the following in depth review of the record evidence:

*Borrowed Servants*

The right of control is in dispute because Mike Richard, a paid employee of Industrial, coordinated the deer netting activity. It is disputed whether Mike Richard was acting on behalf of GMI or Industrial. The only evidence of a fuel purchase showed that an Industrial credit card was used. Mr. Hebert attested to the fact that in times past and on the subject trip to Mexico he drove a fuel truck from Lafayette to Del Rio, Texas, purchasing fuel and a hotel room with an Industrial credit card. The only fuel receipt produced was charged on an Industrial credit card.

Neil Gremillion testified that he worked part-time for Industrial and Mike Richard netting deer in Mexico. He did other jobs for Industrial and was always paid with Industrial checks. He testified that he either drove or flew to Mexico with Mike Richard, who was always the Industrial pilot for the deer netting trips. Mr. Gremillion further testified that Industrial provided two fuel trucks for the deer netting in Mexico and that he himself had driven Industrial fuel trucks to Mexico. Neil Gremillion is the son of Wayne Gremillion, who worked full time managing one of the Richards' leased properties known as Goose Lake.

The issues surrounding Mike Richard's employment with Industrial create issues of fact regarding the other factors including Mr. Richard's selection of Mr. Hebert for the subject trip to Mexico when Neil Gremillion could not go. Likewise, there is an issue of fact regarding whether Mike Richard had a right to fire Mr. Hebert when both men were employed and paid by Industrial. The actual payment of wages for deer netting activities is undocumented and in dispute. Mr. Hebert and Wayne Gremillion testified that they were not paid for

8

deer netting. Defendants imply that the employees were paid "tips." The record reveals, however, that tips paid to employees were from hunting or fishing clients and that the aerial deer netting in Mexico was not a commercial enterprise open to hunters or fishermen according to the testimony of J. Oran Richard.

Regarding the tools, equipment, and location used, the Richards testified that the netting gun and harness system were provided by GMI. However, GMI did not produce any receipts or proof of purchase for either. Paul Marks testified that he purchased the climbing harness from Guidry Hardware in Scott, Louisiana, between 1995 and 1998 for his work on communication towers. He testified that he gave this harness *to Industrial* around 2003 when the Richards were setting up their deer netting activities. The helicopter and pilot, Mike Richard, were provided by Industrial. The place for the activity, the ranch in Mexico, was allegedly supplied through GMI's lease of the property, but the lease of the 40,000–acre ranch and all GMI leases were alleged to be verbal and remain undocumented.

The deer netting activity was not one that Mr. Hebert did over a considerable period of time during his near thirty years with Industrial. He had only been on one prior trip to net deer in Mexico four years before the accident. With regard to whose work was being done in Mexico, Defendants point out Mr. Hebert's own testimony supporting GMI's position that Mr. Hebert did various kinds of work for GMI and that Mike Richard was the boss in Mexico. Mr. Hebert, however, also testified that he had always done whatever the Richards asked him to do on farms and ranches in Louisiana, Texas, South Dakota, and Mexico and that he did not always know on whose behalf the work was being done. He further stated that he did not know on whose behalf the deer netting was done.

Mr. Hebert was a professional CDL driver with Industrial for twenty-nine years. As fuel/chemical supply manager, his duties included ordering, management, transportation, and distribution of fuel. He also described some of his work as "general facility" care. In addition to driving a fuel truck, Mr. Hebert served on various properties of the Richards as a hunting/fishing guide and all-around handy-man. He built fences, maintained feeders and blinds, cut grass, fed cattle, bailed hay, planted trees, worked on the Richards' old farmhouse, helped maintain Industrial's shop, air strip, and landing pads, and did general plumbing, welding, and carpentry. For almost thirty years he was paid by check written by Industrial. Even if some of the work was ostensibly for GMI, deer netting was not one of his regular duties with either Industrial or GMI. It constituted only one trip of a few weeks duration in 2003, about one one-thousandth of one percent of his time with the Richards.

Whether Mr. Hebert acquiesced in the deer netting activity in 2007 is contested. He alleges that he had recently remarked that he was getting too old to perform that type of activity. Mike Richard

approached Mr. Hebert at work in Industrial's shop and asked him to make the trip to Mexico because no one else could go. Mr. Hebert contends that he told Mike Richard that he did not want to go to Mexico on the weekend that the accident occurred. He was marinating rabbits for an annual cook-off that he participated in every year. Mr. Hebert testified that Mike Richard then did not ask him to go, but said, "I want you there." Mr. Hebert testified that he did not have a gun to his head but that it was scary to tell the bosses no. In his affidavit, Mr. Hebert testified that he went to Mexico because he was in fear of losing his job with Industrial. He stated that he was never given additional compensation for his role in the private enterprises of J. Oran Richard, Michael Richard, and/or GMI.

With regard to the last factor, Defendants concede that Industrial did not terminate its relationship with, or relinquish control over, Mr. Hebert. They argue that, under *Humphreys* [*v. Marquette*, 235 La. 355, 103 So.2d 895 (1958),] and *Perry* [*v. Perry & Sons Vault & Grave Serv.*, 03-1519 (La.App 3 Cir. 5/12/04), 872 So.2d 611, *writs denied*, 04-1610, 04-1504, 04-1616 (La. 10/1/04), 883 So.2d 1011-2,] this factor has less weight because the same family owned both Industrial and GMI. We disagree. J. Oran Richard testified that he owned and operated both businesses at the time of the accident. At the time of the accident, Mike Richard was a paid employee of Industrial. He was not an officer or employee of GMI. Even if Mike Richard did coordinate a deer netting operation on behalf of GMI, he did not wear two hats or run both entities as the father did in *Perry*.

In *Perry*, the injured worker drove a garbage truck for his father's sanitation company five days a week for twenty years, and he was paid solely by the sanitation company. After work and on weekends, the son did some work for his father's vault and grave company and was injured while driving a vault and grave vehicle. The workers' compensation judge found that the son was an employee of the vault and grave company and found its insurer liable for benefits. On appeal, this court reversed, finding that the sanitation company was the lending employer, that the vault and grave company was the borrowing employer, and that both of their workers' compensation insurers were solidarily liable. In *Perry*, however, while the father ran both companies, we made it clear that each company "maintained separate equipment" and that the injured son "clearly acquiesced" in the exchange of services. *Perry*, 872 So.2d at 617.

In *Perry*, we cited the 1958 *Humphreys* case involving two separate companies that shared employees and found that even though one boss wore two hats, there was still a borrower-lender relationship and solidary liability. As previously stated, *Perry* and *Humphreys* were workers' compensation cases where the two employers' separate workers' compensation carriers battled over who should pay the benefits. There was no summary judgment issue regarding the separate entities and no tort immunity issue. In fact, we stated in *Perry*, "This is not a doubtful case. There was no question that [the claimant]

was entitled to workers' compensation benefits. The only question was which insurance company, if not both, was obligated to pay those benefits." *Perry*, 872 So.2d at 620.

In *Humphreys*, in discussing that there were two distinct businesses, both of which were liable for workers' compensation benefits as lending and borrowing employers, the supreme court articulated as follows:

> Loans were acquired by each in its own name; bank accounts and charge accounts with merchants were carried by each in its own name. Had it not been for the fact that they each had separate compensation insurers, this case possibly would not be before us.

*Humphreys*, 103 So.2d at 898.

Conversely, in this case, as Mr. Hebert urges, GMI has not produced any documentation in support of its assertion that it was a separate entity entitled to tort immunity as a borrowing employer. J. Oran Richard and Mike Richard testified that Industrial and GMI worked in concert in the deer netting business and that it was a joint operation between the companies. This assertion renders the last factor of control significant because joint employment is legally distinct from borrowed employment. In *Perry*, we distinguished joint employers from borrowing and lending employers, as follows:

> Joint employment requires a "common enterprise that contemplates the employment and control of the claimant by one of the interested parties for the benefit of all." Even though Perry & Sons and Sanitation Services are owned and operated by the same individual, they are not common enterprises. Each corporation provides different services which are not dependent upon, related to, or complementary of the services provided by the other corporation.

*Perry*, 872 So.2d at 619 (citations omitted).

Here, the joint operation and common enterprise referred to by the Richards contemplates the employment and control of Mr. Hebert by Industrial for the benefit of both Industrial and GMI, and it appears that GMI was wholly dependent upon Industrial. Hence, under *Perry*, contrary to Defendants' analysis, this last factor is important even where the businesses are owned and operated by one family. Under *Perry*, GMI is not a borrowing employer. Further, the control by Industrial in this case renders Industrial, but not GMI, liable for workers' compensation benefits and entitled to tort immunity if Mr. Hebert was in the course and scope of his employment with Industrial at the time of his accident. Industrial states that he was not. Based upon the foregoing, the trial court erred as a matter of law in finding

11

borrowed servant status in this case and in granting summary judgment to Defendants on that issue.

*Hebert I*, 72 So.3d at 900-03 (emphasis in original). Judge Amy was the lone dissenter on this particular issue, opining:

> First, I find that the defendants sustained their burden of proof with regard to borrowed employee status since, in my opinion, the parties' submissions lead only to the conclusion that La.R.S. 23:1031(C) is applicable to this employment situation. Undoubtedly Mr. Hebert was an employee of Industrial Helicopters. However, the evidence demonstrates that one of Industrial's functions was to provide its fleet and employees to Game Management for the furtherance of the latter company's operations. Thus, I find that, at the time of the accident, Mr. Hebert was fulfilling the roles of both companies under the borrowed employee factors. *See Perry v. Perry & Sons Vault & Grave Serv.*, 03-1519 (La.App. 3 Cir. 5/12/04), 872 So.2d 611; *Green v. Popeye's, Inc.*, 619 So.2d 69 (La.App. 3 Cir. 1993). In fact, in light of the dual roles played by the management personnel, it seems to me that the factors, by and large, are equally applicable to both companies. Thus, I would affirm this aspect of the trial court's ruling.

*Hebert I*, 72 So.3d at 909-10. The matter then proceeded to the jury, which found "GMI owed Hebert no legal duty." *Hebert II*, 166 So.3d at 1270. That holding was apparently not appealed. Significantly, in the second appeal, this court quoted, in the affirmative, its previous explanation regarding GMI's status as a borrowing employer, and did so again in the third appeal, stating: "This court held initially that Game Management was not a borrowed employer." *Hebert III*, 206 So.3d at 253.

In the third appeal, this court also reaffirmed its holding on course and scope as well as the exclusivity of Hebert's tort recovery: "In the present case, it has been determined that Mr. Hebert was not in the course and scope of his employment, so Industrial is ***not responsible for workers' compensation benefits***. Industrial is ***only*** liable to Mr. Hebert for tort damages." *Hebert III*, 206 So.3d at 254 (emphasis added). This court explained:

> The supreme court held that an employer who is assessed both workers' compensation benefits and tort damages gets a credit or offset for wages and medical expenses to the extent that disability benefits and medical expenses have been paid. However, the amount of the credit should not exceed the amount of wages and medical expenses owed or awarded under tort liability. This is based on the "premise that Louisiana law does not allow for double recovery of the same element of damages." *Albert v. Farm Bureau Ins. Co.*, 05–2496, p. 4 (La. 10/17/06), 940 So.2d 620, 622.

*Id.*

These reasons, which precluded the employee from receiving workers' compensation benefits plus tort damages in an intentional tort setting, should extend as well, in the inverse, to the insured's attempt to collect reimbursement from its workers' compensation insurer for payments this court granted a credit for against its negligence-based tort liability after conclusively finding the payments were not required under the WCA. Simply put, this court has already determined the benefits Industrial seeks reimbursement for are not compensation benefits.

Accordingly, this writ is granted. The OWC's ruling on partial summary judgment is reversed.

We also recognize, *sua sponte*, pursuant to La.Code Civ.P. art. 927(B) and the exclusivity provision of the WCA, that, because this matter sounds in tort, Industrial has neither a right nor a cause of action under the WCA. Thus, we dismiss Industrial's claim, as this matter has lingered in the courts for close to a decade.

## DISPOSITION

**WRIT GRANTED.** The trial court's partial summary judgment on the borrowed servant doctrine is reversed. Further, we dismiss Industrial's claim.

13