WEIMER, Justice.
1 iThis matter is before this court following the granting of motions for summary judgment in the district court. The district court dismissed the claims of an electrical utility company for indemnity from contractors involved with repairs to a building to which the utility company provided electrical service. An employee of one (or more) of the repair contractors was injured when another employee working on a scaffold contacted an overhead power line with a metal object, thereby conducting electricity through the scaffolding. For the reasons that follow, we find that the Overhead Power Line Safety Act allows for indemnity to be provided by contractors who violate the act, to an electrical utility company. However, based on the record before us, we do not reach the issue of whether indemnity is actually owed by any party or is precluded by any party’s defense, but instead we remand this matter to the district court for further proceedings consistent with this opinion.
LFACTUAL BACKGROUND
This matter has been the topic of several reported opinions, including one from this court. The factual history here draws from those prior opinions, as well as from other contents of the record now before this court.
Shortly after Hurricane Katrina, a general contractor, Carl E. Woodward, LLC (“Woodward”), entered into a contract with Eagle Enterprises of Jefferson, Inc., the owner of the Walgreens Shopping Center at 7100 Veterans Memorial Boulevard in Metairie, Louisiana. Woodward subcontracted with Stewart Interior Contractors, LLC (“Stewart”) to install framing and exterior wall material at the shopping center. In turn, Stewart subcontracted with Landaverde Construction, LLC (“Landa-verde”) to assist with providing labor.
Stewart provided a two-story high scaffold in order to facilitate the work on the shopping center wall. Landaverde assisted Stewart’s superintendent with constructing the scaffolding. As work on the shopping center wall progressed, a third level was added to the scaffold and the scaffolding was moved near overhead power lines which provided electrical service to the shopping center. The overhead power lines were owned and operated by Entergy Louisiana, LLC (“Entergy”).
There is some dispute as to how close the scaffolding was located in relation to the overhead power lines, although there seems to be a general agreement among *43 everyone involved that at some point the scaffolding was within ten feet of the overhead power lines. There is no serious dispute, however, that in December 2005, Woodward contacted Entergy because of concerns about the power lines. There is similarly no dispute that on January 3, 2006, an Entergy representative met with Woodward personnel at the shopping center.
| ^During the meeting, the Entergy representative informed Woodward it would take approximately a month for Entergy to devise and implement a plan to make the overhead power lines safe for nearby workers. Entergy also stated that the scaffold was currently too close to the overhead power lines and must be removed without delay.
The next day, January 4, 2006, a Woodward representative instructed a Stewart representative to remove the scaffolding. The Stewart representative was apparently not told that the reason the scaffolding was to be removed was its proximity to the overhead power lines. The Stewart representative informed another Stewart representative to use personnel from Landaverde, the company that had provided labor for erecting the scaffolding, to remove it.
On January 5, 2006, Landaverde laborers, including plaintiff, Daniel Moreno, arrived at the shopping center work site. There is some dispute as to whether the Landaverde laborers were told to roll the wheeled scaffold to the center of the parking lot (away from the overhead power lines) and disassemble it there. Mr. Moreno would later recall that the scaffolding had to be disassembled without first moving it because the multi-level scaffold was attached to the building for stability. Rolling the scaffold, in Mr. Moreno’s view, would risk it toppling over and crashing to the ground.
As Mr. Moreno was standing near the scaffold and evaluating how to best disassemble it, another worker at the top of the scaffold moved a piece of metal that came in contact with both the overhead power line and the scaffolding frame. A resulting arc of electricity flashed from the scaffolding to Mr. Moreno’s body, inflicting serious burns.
| ¿PROCEDURAL HISTORY
On January 4, 2007, Mr. Moreno sued Entergy and others for damages resulting from the power line incident. Entergy answered, denying fault and pleading the comparative fault of Mr. Moreno and the fault of third persons Woodward, Stewart, and Landaverde.
Significantly, Entergy also filed third party demands against Woodward, Stewart, and Landaverde, seeking complete indemnity under the Louisiana Overhead Power Line Safety Act (“OPLSA”) for any amounts which Entergy might be cast into judgment to pay Mr. Moreno. Citing La. R.S. 45:142,[1] Entergy alleged that Woodward, Stewart, and Landaverde had violated the OPLSA by performing work within ten feet of Entergy’s overhead power lines without first making arrangements with Entergy to prevent anyone from contact *44 ing the power lines. Entergy additionally pleaded that the indemnity owed by Woodward, Stewart, and Landaverde under the OPLSA included interest, attorneys’ fees, and all costs associated with Entergy’s investigation of the incident and defense of itself.
Of the three contractors targeted by Entergy’s indemnity claims, Landaverde was the first to argue that if Entergy were ultimately found at trial to have been negligent, the OPLSA did not require indemnity for Entergy’s own negligence. The issue of indemnity was joined in the district court as Landaverde brought a motion for summary judgment seeking dismissal of Entergy’s indemnity claim and, for its part, | ¡;Entergy brought a motion for summary judgment against Stewart urging that the OPLSA required indemnity from Stewart.
The district court considered these motions for summary judgment at a hearing on July 8, 2009. The district court granted Landaverde’s motion for summary judgment and dismissed, with prejudice, Entergy’s third party claim against Landa-verde. Consistent with that ruling, the district court denied Entergy’s motion for summary judgment against Stewart.[2] Later, Stewart and Woodward filed motions for summary judgment citing the same reasoning as the motion successfully brought by Landaverde. The district court granted the motions of Stewart and Woodward, dismissing, with prejudice, En-tergy’s third party demands for indemnity against those contractors.
The district court’s reasons for dismissing Entergy’s demands appear in a somewhat extended colloquy with counsel for the parties. From the colloquy, it appears that the district court accepted for the sake of argument the proposition that the OPLSA might require indemnity for En-tergy’s own negligence. However, it is also apparent that the district court found, in this particular case, no indemnity was due to Entergy because the OPLSA required indemnity only if: 1) notice to En-tergy had not been given before work commenced and 2) the parties involved in the work failed to formulate a work plan with Entergy. The district court found those two conditions in the OPLSA were not met:
[Entergy’s counsel]:
The statute [OPLSA] says, one, give notice if the possibility exist[s] that a worker or a piece of equipment is going to come within ten feet. Once you give notice satisfactory mutual arrangements need to be made before the work commences.
|fiTHE COURT:
I know this isn’t going to make you happy, but don’t you think those arrangements were made?
[Entergy’s counsel]:
No. Those arrangements were not made.
THE COURT:
When [Entergy] told them to move the scaffolding[?]
[Entergy’s counsel]:
No. The arrangements that they’re talking about in the statute under Section B—
THE COURT:
—I know. But you and I are going to talk to each other on a commonsense level. When Entergy knew of the problem and knew that this scaffolding was *45 within the ten feet and they told them to move it, I think there was a plan.
[Entergy’s counsel]:
I disagree with Your Honor.
THE COURT:
You get to.
I’m telling you that I see it as a plan. I see Entergy as onboard. I see Enter-gy as having been given notice. They were out there. They saw the problem. They said, “Correct it, by moving the scaffolding.”
[Entergy’s counsel]:
They told them to move the scaffolding, but they also said if you look under Section B [of La. R.S. 45:143], the work, the work that was going to be performed for which satisfactory mutual arrangements.
THE COURT:
We’ll get back to you within a month [was Entergy’s plan],
[Entergy’s counsel]:
Right. There was no work going on at the site at that time.
THE COURT:
Except [Entergy] told them to move the scaffolding and we’ll get back to you within the month.
[Entergy’s counsel]:
Correct.
|7THE COURT:
I’m going to grant Landaverde’s summary judgment on the Overhead Power Line Act. I’m going to deny the Entergy Motion for Summary Judgment as to Stewart. Again, I think, it’s right with facts, and I think that from a standpoint the summary judgment it’s not an appropriate vehicle as to Stewart.
As to Landaverde, I’m going to grant their summary judgment.
Citing La. C.C.P. art. 1915 (relative to partial summary judgments), the district court designated the summary judgment in favor of Landaverde as a partial but final judgment on August 10, 2009. Referencing its ruling favorable to Landaverde, the district court also granted and designated the summary judgment in favor of Stewart as a final judgment on September 8, 2009, and similarly granted and designated the summary judgment in favor of Woodward as a final judgment on September 21, 2009.
Entergy appealed the dismissal of its third party demands against Landaverde, Stewart, and Woodward. The appellate court affirmed, but “for a reason other than the one provided by the trial court. We conclude that the [third party] claims of Entergy and the motions for summary judgment by Landaverde, Stewart, and Woodward were premature.” Moreno v. Entergy Corp., 09-976, p. 7 (La.App. 5 Cir. 9/10/10), 49 So.3d 418, 421-22. The court explained: “we are upholding the dismissal of Entergy’s [third party] claims ... on account of our own motion of no cause of action on the basis of prematurity.” Id., 09-976 at 9, 49 So.3d at 422.[3]
This court granted writs and reversed the court of appeal, finding the lower court erred in supplying its own “exception of no cause of action based on prematurity,” because no such exception exists in Louisiana law. Moreno v. Entergy Corp., 10-2268, p. 1 (La.2/18/11), 64 So.3d 761. Noting that the crux of the ruling being appealed was the district court’s “finding that the OPL-SA does not create an ^independent right of indemnity for damages incurred as a result of injuries suffered by third par *46 ties,” this court remanded the case to the court of appeal. Id., 10-2268 at 2 and 5, 64 So.3d at 762-763. This court’s remand order instructed the court of appeal to “[consider] ... pretermitted issues not addressed in the original opinion.” Id., 10-2268 at 5, 64 So.3d at 763.
In light of this court’s instruction, the majority of the court of appeal on remand found the issues could be condensed thus: “Entergy would have this Court rule that it is entitled to indemnity for its own acts of negligence.” Moreno v. Entergy Corp., 09-976, p. 8 (La.App. 5 Cir. 10/27/11), 79 So.3d at 406, 410. The court of appeal ruled otherwise. Id. Denying Entergy’s claims for indemnity, the court of appeal relied primarily on the following language from the OPLSA: “Nothing contained in this Chapter shall be construed to alter, amend, restrict or limit the liability of an owner or operator of the high voltage line under current law.” Id., 09-976 at 8, 79 So.3d at 411, quoting La. R.S. 45:144(B).
The court of appeal also supported its ruling with commentary from industry representatives provided when the OPLSA was being considered by the legislature. Specifically, the court of appeal placed great weight on the following comments from a utility company representative:
This bill does not shift responsibility. The utility company remains liable for the utmost degree of care for the safety of people. ... So no responsibility is taken away from the utility. The utility is still liable. There is no liability shift. There is no strict liability. It’s just if you knowingly violate the law and choose not to be safe then you would have to indemnify.
Moreno, 09-976 at 9, 79 So.3d at 411, quoting Meeting of the Commerce Committee of the Louisiana House of Representatives (4/17/01), H.B. 932, available at http://house.louisiana.gov/H_Video/Hse_ Video_Requested.htm# 2001.
IsBy analogy, the court of appeal found that the OPLSA should not be read to provide indemnity for a utility company’s own negligence, just as La. R.S. 9:2780 of the Oilfield Indemnity Act effectively “nullifies any provision in any agreement to which the statute is applicable in which that provision requires defense and/or indemnification where there is any negligence or fault on the part of the indemni-tee.” Moreno, 09-976 at 9, 79 So.3d at 411. As a further analogy, the court of appeal turned to contract law, recognizing that within a contract for indemnity there “must be an express and . unequivocal statement that a party is to be indemnified for that party’s own negligence.” Id.
Lastly, the court of appeal reasoned that indemnifying Entergy for its own fault would conflict with “Louisiana’s system of comparative fault tort law,” under which “Entergy’s liability to plaintiff is limited to its percentage of fault for its own acts of negligence contributing to the accident. To the extent that comparative fault can be assessed against the third-party defendants, Entergy would not be liable for that proportionate share, and would not require indemnification.” Id., 09-976 at 10, 79 So.3d at 411.
Dissenting, Judge Johnson found that La. R.S. 45:144 was unambiguous, such that if a person were found to be an OPL-SA violator, then such person was “ ‘responsible’ for the result of the physical or electrical contact and ... liable to the owner or operator of the high voltage line for all damages, costs or expenses incurred by the owner or operator as a result of the contact.” Id., 09-976 at 2, 79 So.3d at 414 (Johnson, J., dissenting).
From the court of appeal’s majority ruling that Entergy is not entitled to indemnity for its own acts of negligence, Enter- *47 gy applied for writs from this court. In its single assignment of error, Entergy took aim only at the legal conclusion drawn | mby the court of appeal, a conclusion which Entergy restated as “[the OPLSA] denies a power-line owner/operator the right to recover from a violator ‘all damages,’ including the personal-injury damages assessed against the power-line owner/operator, incurred as a result of contact with an energized power-line.” This court granted Entergy’s application for certiora-ri and/or review. Moreno v. Entergy Corp., 12-0097 (La.4/13/12), 85 So.3d 705, 706.
LAW AND ANALYSIS
Appellate courts review summary judgments de novo, using the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Greemon v. City of Bossier City, 10-2828 (La.7/1/11), 65 So.3d 1263, 1267, citing Schroeder v. Bd. of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A court must grant a motion for summary judgment “[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
Here, Entergy’s claims for indemnity from contractors Landaverde, Stewart, and Woodward, which claims were dismissed on summary judgment, were premised on the following provision of the OPL-SA:
If a violation of this Chapter results in physical or electrical contact with any high voltage overhead line, the person violating this Chapter shall be liable to the owner or operator of the high voltage overhead line for all damages, costs, or expenses incurred by the owner or operator as a result of the contact.
La. R.S. 45:144(A).
Inin this court, the three contractors, Landaverde, Stewart, and Woodward, have essentially argued[4] that because the word “indemnity” is never used in La. R.S. 45:144(A) or elsewhere in the OPLSA, that the OPLSA does not require indemnity for an electrical utility company’s own negligence. According to the contractors, the phrase “all damages” employed in La. R.S. 45:144(A) must refer to the physical damage a utility company suffers from a violation of the OPLSA, such as damage to the overhead power lines themselves or to transformers or other utility company equipment. Similarly, the fuller list in the statute of “all damages, costs, or expenses” could refer to economic loss resulting from a power outage, according to the contractors. However, the contractors urge the words “all damages, costs, or expenses” in La. R.S. 45:144(A) cannot shift liability from a utility company to anyone else in this personal injury case, because it was only Mr. Moreno, not the utility company, who suffered “damages, costs, or expenses” when the power lines were contacted.
For its part, Entergy points to the expression “all damages, costs, or expenses” employed in La. R.S. 45:144(A) and argues that from that broad language, indemnity *48 for a utility company’s own negligence is necessarily owed when a contractor or anyone else violates the OPLSA. According to Entergy, a violation of the OPLSA occurred when the scaffolding was placed within 10 feet of an overhead power line before making any safety arrangements with Entergy.[5] According to Entergy, the phrase “all damages, costs, or expenses” was chosen by the legislature because 112requiring indemnity for these items from contractors and others would encourage compliance with the OPLSA and therefore promote safety near electrical lines.
In determining whether either of the parties’ proposed interpretations is correct, analysis must begin with the words of the statute at issue. Although interpretation of La. R.S. 45:144 presents a res nova issue, our inquiry is guided by well-established principles of statutory interpretation. The starting point in the interpretation of any statute is the language of the statute itself. Words and phrases shall be read in context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. The meaning and intent of a law is determined by considering the law in its entirety and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. See Kinchen v. Livingston Parish Council, 07-0478, p. 5 (La.10/16/07), 967 So.2d 1137, 1140, quoting State v. Dick, 06-2223 (La.1/26/07), 951 So.2d 124, 130.
With these principles in mind, our focus turns to the full text of La. R.S. 45:144 and is not limited to subsection (A) of that statute, because subsection (A) does not provide sufficient guidance as to the meaning of “all damages, costs, or expenses.” In foil, La. R.S. 45:144 provides:
A. If a violation of this Chapter results in physical or electrical contact with any high voltage overhead line, the person violating this Chapter shall be liable to the owner or operator of the high voltage overhead line for all damages, costs, or expenses incurred by the owner or operator as a result of the contact.
B. Nothing contained in this Chapter shall be construed to alter, amend, restrict, or limit the liability of an owner or operator of the high voltage line under current law.
C. Nothing contained in this Chapter shall be construed to alter, amend, restrict, or limit the exclusive remedy provisions of R.S. 23:1032, except for the rights provided to the owner or operator of the high voltage line provided in Subsection A of this Section.
11sPointing to subsection (B), the contractors argue that the legislature intended to keep Louisiana’s comparative fault scheme unchanged. Under comparative fault, each party must pay only for the percentage of fault ascribed against the party by the finder of fact after trial. Thus, argue the contractors, indemnity conflicts with comparative fault and subsection (B) reveals a legislative intent to uphold comparative fault. Also pointing to subsection (B), Entergy makes a comparative fault argument of sorts. Specifically, Entergy argues that subsection (B) simply preserves the right of a plaintiff to sue an electrical utility company in the first instance, and the utility company is free to press its own demand within the lawsuit for indemnity against anyone who is shown to be at fault for violating the OPLSA.
Finding that subsection (B) does not supply a definition — or even a significant clue at this point — for the meaning of the *49 phrase “all damages, costs, or expenses” in subsection (A), the last part of the statute must be reviewed. Subsection (C) contains a very specific statutory reference and a very specific exception.
Subsection (C) of La. R.S. 45:144 provides that the entirety of the OPLSA cannot “alter, amend, restrict, or limit the exclusive remedy provisions of R.S. 23:1032, except for the rights provided to the owner or operator of the high voltage line provided in Subsection A of this Section.” Louisiana R.S. 23:1032 contains what is commonly referred to as the “exclusive remedy” of an injured employee to obtain workers’ compensation from an employer.
Under the “exclusive remedy” provided by La. R.S. 23:1032, an employer is generally immune from tort liability to an injured employee. See La. R.S. 23:1032(C). Lower courts have interpreted the exclusive remedy described by La. R.S. 23:1032 to not only render an employer immune to an employee’s tort claims against the employer, but to also render the employer immune to a third party’s claims |uagainst the employer, including third party claims for indemnity. See, e.g., Jackson v. America’s Favorite Chicken Co., 00-0681 p. 3 (La.App. 4 Cir. 01/31/01), 778 So.2d 1257, 1260, writ denied, 01-0596 (La.4/27/01), 791 So.2d 633; Berninger v. Georgia-Pacific Corp., 582 So.2d 266, 267 (La.App. 1 Cir.1991).
Viewed against the background of such a significant immunity for an employer, the exception under La. R.S. 45:144(C) of the OPLSA is very clear about the overall function of La. R.S. 45:144. See City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 05-2548, p. 17 (La.10/1/07), 986 So.2d 1, 17 (“courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found.”), citing Moss v. State, 05-1963, p. 15 (La.4/4/06), 925 So.2d 1185, 1196; see also St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671, 676 (1947). The effect of the exception in subsection (C) is that the “owner or operator of the high voltage line” is allowed to pursue the remedy “provided in Subsection A of this Section.” In other words, while an employer may invoke workers’ compensation immunity against the claim of an employee injured by contacting a high voltage line even if the employer violated the OPLSA, the employer may not use that immunity to block the utility company’s claim for “all damages, costs, or expenses” under subsection (A) of La. R.S. 45:144.
This court must reject, therefore, the contractors’ argument that “all damages, costs, or expenses” under subsection (A) of La. R.S. 45:144 restricts a utility company to recovering those items only inasmuch as the utility company itself has suffered a damage to its equipment or an economic loss for a service interruption to its customers. To accept the contractors’ arguments would require the exception to | ]5the workers’ compensation exclusive remedy under subsection (C) of La. R.S. 45:144 be ignored entirely. This cannot be done. See Louisiana Assessors’ Retirement and Relief Fund, 05-2548 at 17, 986 So.2d at 17. Instead, because subsection (C) of La. R.S. 45:144 erases an immunity raised against personal injury claims, we are constrained to find that the cause of action described in subsection (A) (the cause of action being against “the person violating this Chapter,” i.e., the OPLSA) is a cause of action applicable to personal injury claims brought against an electrical utility company.
*50 This finding about the meaning of subsections (A) and (C) sheds significant light on the meaning of subsection (B) (“Nothing contained in this Chapter shall be construed to alter, amend, restrict, or limit the liability of an owner or operator of the high voltage line under current law.”). As noted earlier, subsection (B) standing alone does not offer much insight into the operation of the OPLSA. However with the understanding that subsection (A) describes a cause of action in favor of a utility company and against an OPLSA violator, it is seen that subsection (B) simply requires the usual allocations of fault to be ascertained in a multi-party trial. That is, under subsection (B), an allocation of a degree of fault, if any, must be ascribed to the utility company. But, to the extent a utility company proves an OPLSA violation by another party, the cause of action described in subsection (A) of La. R.S. 45:144 (by which “all damages, costs, or expenses” can be recovered) allows whatever fault is allocated to the utility under subsection (B) to be recouped by the utility company from the OPLSA violator. Therefore, while subsection (B) standing alone appears to shed little light on the meaning of “all damages, costs, or expenses” in subsection (A) of La. R.S. 45:144, viewed in the fuller context of all the other subsections of La. R.S. 45:144, subsection (B) further confirms that the utility company can recover |1fifrom the OPLSA violator even for the utility company’s own negligence because the allocation of the utility company’s fault can be ultimately passed to an OPLSA violator.[6]
The operation of the three subsections of La. R.S. 45:144 can be restated as follows: subsection (A) describes a cause of action in favor of a utility company and against an OPLSA violator; subsection (B) requires an allocation of a degree of fault, if any, to be made at trial and any allocation against the utility company is recoverable against the OPLSA violator if the utility company has successfully proven its cause of action under subsection (A); and, if an employer is an OPLSA violator, subsection (C) erases the immunity that the employer normally enjoys under the Workers’ Compensation Act. Although the OPLSA nowhere uses the word “indemnity,” La. R.S. 45:144 effectively operates as indemnity.[7] See Nassif v. Sunrise Homes, *51 Inc., 98-3193, pp. 2-3 (La.6/29/99), 739 So.2d 183, 185:
Indemnity ... means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed.... It is based on the principle that everyone is responsible for his own 117wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss. [Citations omitted.]
Having found that subsection (A) of La. R.S. 45:144 describes a cause of action in favor of an electrical utility company in personal injury cases[8] and that subsection (B) confirms that the utility company is not precluded from recovery from an OPL-SA violator even for the utility company’s own negligence, these findings are applied to the procedural posture of this case. Here, Entergy has brought claims for “all damages, costs, or expenses” by way of third party demands it has filed against three contractors, Landaverde, Stewart, and Woodward. Entergy urged each contractor was in some way an OPLSA violator.
The contractors filed motions for summary judgment for dismissal of Entergy’s third party demands. However, Entergy would have the burden at trial to prove the existence of an indemnity obligation for the alleged OPLSA violation(s) by the contractors. See La. C.C. art. 1831 (“A party who demands performance of an obligation must prove the existence of the obligation.”). To obtain dismissal of Enter-gy’s claims by summary judgment, the contractors were not required to negate every element of Entergy’s claim for indemnity. See La. C.C.P. art. 966(C)(2) (“if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim ..., but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim.... ”).
hJn their motions for summary judgment, the contractors did not attempt to negate every element of Entergy’s indemnity claims, but instead argued that Enter-gy was not entitled to indemnity because, as a matter of law, the OPLSA did not provide indemnity for a utility company’s own negligence.
At the hearing, however, the district court took the matter a step beyond deciding the legal question of whether OPLSA provided the possibility for indemnity. After reviewing the pleadings and evidentia-ry record, the district court essentially found Entergy could not prove an OPLSA violation. Specifically, because the contractors had provided notice to Entergy of the scaffolding and Entergy directed the scaffolding be removed, the district court found the contractors could not have violated the OPLSA, and indemnifying Enter-gy could not therefore be required. The statute applicable to this line of reasoning is La. R.S. 45:143, which provides, in pertinent part:
A. When any person desires to temporarily carry on any function, activity, work, or operation in closer proximity to *52 any high voltage overhead line than permitted by this Chapter, the person or persons responsible for the work to be done shall promptly notify the owner or operator of the high voltage overhead line prior to the scheduled commencement of the work. Such notice shall be reasonable, considering the work to be done; however, the notice shall not be less than forty-eight hours prior to the scheduled commencement of the work, exclusive of holidays and weekends, except in emergency situations that include police, fire, and rescue emergencies, in which case the notice shall be made as soon as possible.
B. The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner or operator of the high voltage overhead lines and the person or persons responsible for the work to be done. The owner or operator of the lines shall initiate the agreed upon safety arrangements within three working days and shall complete the work promptly, subject to emergency weather conditions. Arrangements may include placement of temporary mechanical barriers separating and preventing contact between material, equipment, or persons and high voltage overhead lines; temporary deen-ergization and grounding; temporary location or raising of the lines; or by other means deemed appropriate by the owner or operator of the lines.
|13On this record, we do not decide whether notice by the contractors was sufficient or whether satisfactory mutual arrangements had been negotiated.
In reviewing the hearing on the summary judgment, we observe in the record that counsel for Entergy argued in the district court, incorrectly, that the threshold for applying the OPLSA is when a power line is energized with a voltage of at least 120 volts. However, the actual threshold for applying the OPLSA to any incidental contact with an overhead power line is when a power line has “a voltage in excess of six hundred volts.” La. R.S. 45:141(2). Other than counsel’s statement and the attending implication that the incorrect threshold of 120 volts was met, the record appears devoid of an indication of the actual voltage of the power line at issue. In this court, the parties did not brief or argue whether this or other thresholds for applying OPLSA were met or unmet. To reiterate, the contractors’ motions for summary judgment were not required to negate all elements, such as the voltage threshold, which Entergy has the burden of proving to establish an OPL-SA violation. See La. C.C.P. art. 966(C)(2).
As procedurally postured and on the record as it currently stands, we find it appropriate for our review of this case to go no further than resolving the legal question of whether a utility can be indemnified for its own negligence pursuant to OPLSA. We do not reach, therefore, the issue of whether indemnity is actually owed by any party or is precluded by any party’s defense. Because “appellate courts review judgment, not reasons for judgment,” Wooley v. Lucksinger, 09-0571, p. 77 (La.4/1/11), 61 So.3d 507, 572, having decided favorable to Entergy the legal issue of whether OPLSA might require indemnity, we vacate the district court’s grant of summary judgment in favor of the contractors.
ImDECREE
To the extent the court of appeal found that the OPLSA affords no indemnity to a utility provider for the utility company’s own negligence (Moreno, 09-976 at 8, 79 So.3d at 410), we reverse and vacate that part of the opinion. The district court’s *53 grant of summary judgment in favor of the contractors is vacated and this matter is remanded to the district court for further proceedings consistent with this opinion.
REVERSED IN PART AND REMANDED.

. La. R.S. 45:142 provides:
No person shall, individually or through an agent or employee, perform any function or activity upon any land, building, highway, waterway, or other premises, if at any time during the performance of any function or activity it is possible that the person performing the function or activity shall move or be placed within ten feet of any high voltage overhead line, or if it is possible for any part of any tool, equipment, machinery, or material used, handled, or stored by such person to be brought within ten feet of any high voltage overhead line or conductor during the performance of such function or activity.

. Entergy’s motion and supporting materials were not included in the record submitted to this court since Entergy did not seek review of the denial of its motion for summary judgment.

. One judge concurred and would have allowed Entergy to later "re-urge [ ] motions at such time the matters asserted therein are ripe for determination.” Moreno, 09-976 at 3, 49 So.3d at 425 (Gravois, J., concurring).

. Landaverde, Stewart, and Woodward have each presented either their own briefs or other individual oppositions to Entergy's position. However, just as their procedural postures in this litigation as to Entergy are aligned, the legal arguments of these contractors are essentially consonant. Therefore, unless a significant individual difference is otherwise noted, this opinion treats any argument advanced by any one of the contractors as applicable to them all collectively.

. These acts, according to Entergy, violated La. R.S. 45:142 (quoted supra, footnote 1).

. During oral argument, counsel for Entergy conceded that a utility company, which is found at fault to the tort victim, remains liable to the tort victim, but has a right of indemnity from the OPLSA violator.

. Having found the statute is clear and unambiguous, the court's inquiry into its intent and operation comes to an end. See La. R.S. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.”). Nevertheless, in an effort to be thorough in our review, an evaluation of legislative history reveals the OPLSA was sponsored on behalf of utility companies that supported the proposed legislation in the face of opposition by general contractors. Based on the debate of House Bill 932 before the Louisiana House of Representatives Commerce Committee, the OPLSA was introduced by design to shift responsibility for payment of damages from utilities to those who come in contact with power lines while performing work without notice to utilities or an opportunity for the utilities to make the power lines safe for work conducted in the near vicinity of the lines. The word "indemnity” was used frequently by opponents and proponents in the debate when discussing the effect of the legislation. After debate, the representative who had introduced the bill to the committee made the following summation: "It is a safety bill. If we can save one life over the course of the next ten years then we’ve done a great job with this piece of legislation.” See Meeting of the Commerce Committee of the Louisiana House of Representatives (4/17/2001), H.B. 932, available at http://house.louisiana.gov/H_ Video/Hse_Video_Requested.htm# 2001. Given this legislative history, review of the OPL-SA pursuant to the principles of statutory interpretation cited in this opinion is confirmed.

. Because there has been no claim by the utility company, Entergy, for its own physical damage or economic loss for a service interruption to its customers, the court is not called upon in this case to decide whether the cause of action described in subsection (A) of La. R.S. 45:144 applies to such claims. Nothing in this opinion should be interpreted to decide such questions.