# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-93


EVELYN HONORE, ET UX.

VERSUS

FAMILY DOLLAR STORES OF LOUISIANA, INC., ET AL.


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 10-C-3322-B (C)
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

**********

### MARC T. AMY
### JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and James T. Genovese, Judges.


                                                          **AFFIRMED.**

**Saunders, J., dissents and assigns written reasons.**

**Anthony C. Dupre**
**Post Office Drawer F**
**Ville Platte, LA   70586**
**(337) 363-3804**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Evelyn Honore**
    **Darren Honore**

**Daniel B. Barzare**
**Post Office Box 1143**
**Ville Platte, LA   70586**
 **(337) 363-7309**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Evelyn Honore**
    **Darren Honore**

**A. Gerard Caswell**
**Post Office Box 1600**
**Eunice, LA   70535**
**(337) 457-7378**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Amy Shopping Center, Inc.**
     **Wilford Arnaud**

**Donald R. Richard, Jr.**
**Post Office Drawer 1370**
**Eunice, LA   70535**
**(337) 457-4116**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Family Dollar Stores of Louisiana, Inc.**

**AMY, Judge.**

The plaintiffs filed suit for damages related to a fall in a shopping center's parking lot. The plaintiffs filed suit under negligence and strict liability causes of action against the shopping center as well as one of its commercial tenants. The trial court entered summary judgment in favor of the tenant, finding that it owed no duty with regard to the condition of the shopping center's parking lot. The plaintiffs appeal. For the following reasons, we affirm.

### Factual and Procedural Background

Evelyn Honore and her husband, Darren Honore, allege that Mrs. Honore sustained injury when she stepped in a hole in the parking lot of Amy Shopping Center, Inc. after exiting her vehicle. The record indicates that Mrs. Honore was visiting the shopping center in order to enter Family Dollar Stores of Louisiana, Inc., a shopping center tenant. Claiming damages from the fall, the plaintiffs instituted this matter against the shopping center and its sole shareholder.[1] The plaintiffs advanced negligence and strict liability theories of recovery related to the condition of the parking lot. The plaintiffs also named Family Dollar as a defendant and asserted that the store should have taken measures to remedy the condition of the parking lot or to warn its customers of the defective condition.

Family Dollar denied responsibility for the condition of the shopping center's parking lot and asserted that, as a tenant, it only had a right to use the common parking area shared with other tenants and that it did not have control over the shopping center's parking lot so as to require it to make repairs. Family Dollar filed a motion for summary judgment in this regard and pointed to the rights/responsibilities set forth in its lease with the shopping center. Following a

---

[1]The suit against the shareholder, Wilford Arnaud, was subsequently dismissed.

hearing, the trial court granted Family Dollar's motion for summary judgment, dismissing the plaintiffs' claims.

The plaintiffs appeal.

## Discussion

*Summary Judgment*

An appellate court reviews a ruling on a motion for summary judgment under the same criteria that governed the trial court's consideration of the motion. *Moreno v. Entergy Corp.*, 12-0097 (La. 12/4/12), 105 So.3d 40. In this regard, La.Code Civ.P. art. 966(B)(2) provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavit, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Further, La.Code Civ.P. art. 966(C)(2) states that a moving party who will not bear the burden of proof at trial must only "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." If the adverse party subsequently "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

*Duties as a Tenant*

As at the trial court, the parties largely draw their respective arguments from the lease controlling the relationship between the shopping center and its tenant, Family Dollar. The lease, submitted in support of the motion for summary judgment, provides that Family Dollar, as the tenant, acquired the right to use the store premises, as well as "the right to use, in common with other tenants in the shopping center, the paved, marked, lighted parking," as well as certain service and access areas described within the lease. Additionally, the lease provides:

2

12. <u>MAINTENANCE AND REPAIRS</u>. . . . In addition, the Landlords agree they will be responsible for any major repairs and replacements to the plumbing, electrical, heating and air conditioning systems, and that they will keep the paved and marked parking, service and access areas maintained, including the removal of snow, trash and debris, and in a good state of repair and properly lighted.

Referencing the lease, the trial court explained in reasons for ruling that, "Family Dollar had no duty to inspect the premises and that Family Dollar could not be held strictly liable for the allegedly defective condition, because it did not have garde or custody of the parking lot at the time of the accident."

However, the plaintiffs contend that a subsequent portion of the lease provides the foundation for an independent duty on the part of Family Dollar. On this point, Section 14 of the lease provides:

14. <u>UNPERFORMED COVENANTS OF LANDLORDS MAY BE PERFORMED BY TENANT</u>. *If the Landlords shall fail to perform any of the affirmative covenants to be performed by the Landlords pursuant to this lease*, or if the Landlords should fail to make any payment which they herein agree to make, including payments secured by a mortgage or deed of trust, on the shopping center of which the demised premises are a part or on the demised premises, *then the Tenant may, at its option, after notice to the Landlords, perform such affirmative covenant*, or make any such payments, as the Landlords' agent, and in the Tenant's sole discretion as to the necessity therefore, and the full amount of the cost and expense entailed, or of the payment so made, shall immediately be owing by the Landlords to the Tenant. The Tenant shall have the right to deduct the amount thereof, together with interest at the legal rate thereon, from the date of payment, without liability of forfeiture, out of rents then due or thereafter coming due hereunder. Tenant shall have a lien on the demised premises and on the shopping center of which the demised premises are a part, to secure the repayment of any such amount with interest. The option given in this paragraph is for the sole protection of the Tenant, and its existence shall not release the Landlords from any obligation to perform any of the covenants herein provided to be performed by the Landlords, or deprive the Tenant of any legal right which it may have by reason of any default by the Landlords.

(Emphasis added.)

The plaintiffs suggest that Family Dollar has admitted that an employee had informed the shopping center of the need to repair the parking lot, thus invoking

3

Paragraph 14 of the lease. On this latter point, we note that Family Dollar disputes initial statements it made which indicated that its employee had advised the shopping center of the parking lot's condition.[2]

Despite any factual dispute regarding whether Family Dollar informed the shopping center that the parking lot was in need of repair,[3] we find no merit in the plaintiffs' argument regarding the lease. Instead, Paragraph 12 of the lease specifically places the responsibility for repairing and maintaining the parking lot with the shopping center. Although Paragraph 14 provides that Family Dollar "may" perform those functions in the event the shopping center failed to perform the lease's "affirmative covenants," reading of the paragraph in its full context confirms that assumption of that duty is at the discretion of the tenant. Notably, Paragraph 14 provides that "[t]he option given in this paragraph is for the sole protection of the Tenant, and its existence shall not release the Landlords from any obligation to perform any of the covenants herein provided to be performed by the Landlords[.]"

---

[2] In its brief to this court, Family Dollar states that:

Plaintiff incorrectly states in his appellant brief that "A FAMILY DOLLAR STORES OF LOUISIANA, INC. employee notified AMY SHOPPING CENTER, INC. of the condition of the parking lot." This statement was listed by Counsel for FAMILY DOLLAR STORES OF LOUISIANA, INC. in the initial Motion for Summary Judgment as an undisputed fact; however, after further discovery it was concluded by Counsel for FAMILY DOLLAR STORES OF LOUISIANA, INC. that there was no evidence that a Family Dollar Store employee had ever contacted AMY SHOPPING CENTER, INC. about the condition of the parking lot. An Amended Motion for Summary Judgment and Amended Memorandum in Support of the Motion for Summary Judgment was filed on May 15, 2012 retracting the statement. As a result of the retraction of the statement there is absolutely no evidence in the record from either party that FAMILY DOLLAR STORES OF LOUISIANA, INC. had any knowledge of the condition of the parking lot.

[3] For example, in a deposition excerpt attached to Family Dollar's amended motion for summary judgment, the owner of the shopping center denied that anyone from Family Dollar had informed him of the condition of the parking lot. However, in a similarly-attached deposition excerpt, Mrs. Honore explained that, when she fell, a manager from Family Dollar approached them and "just kept saying, 'I've been telling them to fix the parking lot. We need to get in touch with the people to get the parking lot fixed before someone gets hurt.'"

4

In short, the evidence, in support of and in opposition to, the motion for summary judgment does not indicate that Family Dollar invoked Paragraph 14 so as to permit it to proceed with its own repairs on the shopping center's parking lot. Rather, the provision only provided Family Dollar with the option to perform that duty at its discretion under specified conditions. There is no indication here that it chose to avail itself of the protections afforded by that paragraph.

*Extra-Contractual Duties*

Similarly, we find no evidence indicating that the plaintiffs "will be able to satisfy [their] evidentiary burden of proof at trial" with regard to their alternative assertion that Family Dollar owed a duty to customers to provide a warning or alternative entrance to the store. *See* La.Code Civ.P. art. 966(C)(2). As evidenced above, we again here note that Family Dollar did not own the parking lot, that Family Dollar only had a right of use of the common parking lot, and that there is no indication that Family Dollar independently caused or exacerbated the complained of condition. The plaintiffs presented no evidence indicating that, in the presence of these factors, Family Dollar breached a duty owed. Rather, the plaintiffs have only presented an allegation of such a duty and breach thereof. Reference to La.Code Civ.P. art. 967(B) indicates when a motion for summary judgment is made and supported as provided in La.Code Civ.P. art. 966, "an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue of material fact." While the plaintiffs submitted photographs of the complained of condition and a receipt from the repairs ultimately made by the shopping center, no evidence was presented to indicate that the condition was such so as to have created a duty and resulting breach by this defendant, a tenant.

Accordingly, we find no merit in the plaintiffs' arguments and determine that the trial court appropriately entered summary judgment in favor of Family Dollar Stores of Louisiana, Inc.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assigned to the plaintiffs—appellants, Evelyn Honore and Darren Honore.

**AFFIRMED.**

EVELYN HONORE, ET UX.

VERSUS

FAMILY DOLLAR STORES OF LOUISIANA, INC., ET AL.

**Saunders, J., dissents and assigns written reasons**

It is undisputed that the accident occurred in the parking lot owned by Amy Shopping and leased by Family Dollar. The foremost issue at hand is whether the Honores met their burden of proof in showing Family Dollar had "custody" over the lot such that an issue of material fact exists and summary judgment was inappropriate.

In *Dupree v. City of New Orleans*, 99-3651 (La. 8/31/00), 765 So. 2d 1002, 1009, the Louisiana Supreme Court stated:

> Determining who has the custody or garde of the thing is a fact driven determination. *Doughty v. Insured Lloyds Ins. Co.*, 576 So.2d 461, 464 (La.1991). Moreover, because Article 2317 imposes liability upon persons for things in their custody or garde, a principle much broader than ownership, it is clear that more than one party may have custody or garde of a thing under La.Civ. Code art. 2317, determined by an examination of the parties' actions and relationships to the thing causing the injury. *King*, 543 So.2d at 1329-30 (discussing dual garde and noting that under appropriate circumstances the custody or garde of a thing may be divided between two persons); *Ehrman v. Holiday Inns, Inc.*, 94-0312 (La.App. 4 Cir. 3/29/95), 653 So.2d 732, 738 (stating that "[m]ore than one party may have custody and control or garde under La.C.C. 2317"); *Thumfart*, 613 So.2d at 289-90 & n. 4 (concluding that dual garde may exist under La. Civ.Code art. 2317 and liability of the nonowner is determined by his own actions and relationship to the thing causing the injuries); see also Maraist & Galligan, Louisiana Tort Law § 14-5, at 341 & n.51 (discussing dual garde). The person who has custody or garde of a thing is he who has the legal duty to prevent its vice or defect from harming another. *King*, 543 So.2d at 1328.

Custody, distinct from ownership, refers to a person's supervision and control (garde) over a thing posing an unreasonable risk of harm. *Loescher v. Parr*, 324 So.2d 441 (La.1975). "Under Louisiana law, the guardian is in a better position than the innocent victim to detect, evaluate, and take steps to eliminate a defect posing an unreasonable risk of harm to others." *Thumfart v. Lombard*, 613 So. 2d 286, 290 (La.App. 4 Cir. 1993), *writ denied sub nom. Montalbano v. Lombard*, 617 So.2d 1182 (La.1993) (citations omitted).

The supreme court in *Dupree* went on to define a test for determining who has custody or garde of a thing by setting forth general principles to assist the trier-of-fact. It stated, that in determining whether a thing is in one's custody or garde, courts should consider "(1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." *Dupree*, 765 So.2d at 1009 (citations omitted).

In the present case, the Honores, citing *Dupree*, argue summary judgment was inappropriate due to the nature of the lease agreement. Under the Maintenance and Repairs portion of the lease,

> [T]he landlords [Amy Shopping] agree they will be responsible for major repairs and replacements to the plumbing, electrical, heating, or air conditioning systems, and that they will keep the paved and marked paving, service, and access areas maintained, including removal of snow, trash, debris, and in good state of repair and properly lighted.

The Honores contend the above provision encompasses a list of "affirmative covenants," a term drafted by Amy Shopping. Furthermore, the lease states (emphasis added):

> If the Landlords [Amy Shopping] shall fail to perform any of the affirmative covenants to be performed by the Landlords pursuant to this lease, or if the Landlords fail to make any payment which they herein agree to make, including payments secured by a mortgage or

2

deed of trust, on the shopping center of which the demised premises are a part on or on the demised premises, **then the Tenant may, at its option, after notice to the Landlords, perform such affirmative covenant**.

The lease is clear that Amy Shopping is responsible for keeping the paved areas maintained, but, should Amy Shopping fail to keep this "affirmative covenant," Family Dollar may, after notice to Amy Shopping, perform the affirmative covenant. Family Dollar admits an employee notified Amy Shopping of the condition of the parking lot. This notice would give Family Dollar the option to maintain the parking lot or take affirmative steps to correct the pothole. It gives Family Dollar "the right to direction and control over the thing."

Utilizing the two-part test set forth in *Dupree*, a material fact exists, under the terms of the lease, whether Family Dollar had the right of direction and control over the premises upon Amy Shopping's notice and failure to act. Furthermore, under the second *Dupree* factor, Family Dollar benefited from the parking lot in front of its premises. Rather than take steps to repair, resurface, block off, or warn of the area in front of its store, Family Dollar chose to abide by the narrow portion of its lease with Amy Shopping and argues the lease exculpates it from any liability for defects outside its premises. However, custody is a much broader principle than ownership. Family Dollar had the right to use the parking lot and take affirmative actions should Amy Shopping fail to maintain it. Family Dollar admits an employee notified Amy Shopping and that Amy Shopping did not comply with Family Dollar's request.

Therefore, I would find that a material fact exists as to whether, once Amy Shopping was put on notice of the pothole by Family Dollar, Family Dollar had control over this "affirmative covenant" portion of the lease.